## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| JASON SHIM, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DZS INC., CHARLES DANIEL VOGT, and MISTY KAWECKI, <br><br> Defendants. | Civil Action No. 4:23-cv-00549-SDJ <br><br> Hon. Sean D. Jordan |
| KEITH LINK, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DZS INC., CHARLES DANIEL VOGT, and MISTY KAWECKI, <br><br> Defendants. | Civil Action No. 4:23-cv-00603-SDJ <br><br> Hon. Sean D. Jordan |
| ROBERT CODY, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DZS INC., CHARLES DANIEL VOGT, and MISTY KAWECKI, <br><br> Defendants. | Civil Action No. 4:23-cv-00713-SDJ <br><br> Hon. Sean D. Jordan |

**MEMORANDUM OF LAW IN SUPPORT OF JASON S. HAWKE'S
MOTION FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS
LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................................................... 1

II.   ARGUMENT ............................................................................................................... 2

    A.   The PSLRA Process ........................................................................................... 2

    B.   Movant Jason S. Hawke Possesses the "Largest Financial Interest" in the Action
        Under Either of the Alleged Class Periods. ....................................................... 3

        1.   *Initial Class Period – March 10, 2023 to May 31, 2023, Inclusive.* ........................... 4

        2.   *Expanded Class Period – August 2, 2022 to June 1, 2023, Inclusive.* ........................ 7

    C.   Mr. Hawke Satisfies the Requirements of Rule 23 ........................................... 9

    D.   Mr. Hawke Is the Presumptive Lead Plaintiff. ................................................. 14

III.  CONCLUSION ............................................................................................................ 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alkhoury v. Lululemon Athletica, Inc.,*
No. 13 Civ. 4596, 2013 U.S. Dist. LEXIS 144105 (S.D.N.Y. Oct. 1, 2013) .......................... 9

*Brody v. Zix Corp.,*
2005 U.S. Dist.  LEXIS 13871 (N.D. Tex. 2005) ................................................................... 3

*Buettgen v. Harless,*
263 F.R.D. 378 (N.D. Tex. 2009) ......................................................................................... 3

*In re Cendant Corp. Litigation,*
264 F.3d 201 (3d Cir. 2001) ......................................................................................... 11, 12

*Chao Sun v. Han,*
Civil Action No. 15-703, 2015 U.S. Dist. LEXIS 64060 (D.N.J. May 14, 2015) ................. 13

*City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.,*
Nos. 17 CV 1677, 1958, 2017 U.S. Dist. LEXIS 199868 (N.D. Ohio Dec. 4, 2017) ............... 9

*In re Cobalt Int'l Energy, Inc. Sec. Litig.,*
2017 U.S. Dist. LEXIS 91938 (S.D. Tex. 2017) ................................................................... 10

*Dura Pharm., Inc. v. Broudo,*
544 U.S. 336 (2005) .......................................................................................................... 4, 8

*Eichenholtz v. Verifone Holdings, Inc.,*
No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008) ................. 8

*In re Enron Corp., Sec. Litig.,*
206 F.R.D. 427 (S.D. Tex. 2002) ...................................................................................... 3, 10

*Espinoza v. Whiting,*
No. 4:12cv1711 SNLJ, 2013 U.S. Dist. LEXIS 6227 (E.D. Mo. Jan. 16, 2013) ..................... 8

*Foster v. Maxwell Techs., Inc.,*
Nos. 13-cv-00580-BEN-RBB, 2013 U.S. Dist. LEXIS 154538 (S.D. Cal. Oct. 24, 2013) ...... 8

*Kux-Kardos v. VimpelCom, Ltd.,*
151 F. Supp. 3d 471 (S.D.N.Y. 2016) .................................................................................... 8

*In re Lease Oil Antitrust Litig.,*
186 F.R.D. 403 (S.D. Tex. 1999) .......................................................................................... 11

*In re LightInTheBox Holding Co., Sec. Litig.,*
2013 U.S. Dist. LEXIS 165842 (S.D.N.Y. Nov. 21, 2013) ..................................................... 8

*Maliarov v. Eros Int'l PLC,*
   15-CV-8956 (AJN); 16-CV-223 (AJN), 2016 U.S. Dist. LEXIS 46082 (S.D.N.Y. Apr. 5,
   2016) ................................................................................................................ 7

*Marcus v. J.C. Penney Co.,*
   No. 6:13-CV-736, 2014 U.S. Dist. LEXIS 197529 (E.D. Tex. Feb. 28, 2014) ........................ 8

*Marjanian v. Allied Nev. Gold Corp*.,
   No. 3:14-cv-0175-LRH-WGC, 2015 U.S. Dist. LEXIS 2782 (D. Nev. Jan. 8, 2015) ......... 4, 9

*Micholle v. Ophthotech Corp.*,
   No. 17-CV-210 (VSB), 2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. Mar. 13, 2018)................ 12

*In re OCA, Inc.,*
   2008 U.S. Dist. LEXIS 84869 (E.D. La. 2008) ....................................................... 10

*Pio v. General Motors Co.*,
   No. 14-11191, 2014 U.S. Dist. LEXIS 151205 (E.D. Mich. Oct. 24, 2014) ........................... 9

*In re Plains All Am. Pipeline, L.P. Sec. Litig.,*
   2015 U.S. Dist. LEXIS 163811 (S.D. Tex. 2015) .................................................. 10

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
   256 F.R.D. 620 (E.D. Wis. 2009) ...................................................................... 6

*Ragan v. Appharvest, Inc.*,
   2021 U.S. Dist. LEXIS 238168 (S.D.N.Y. Dec. 13, 2021) ............................................. 5, 6, 7

*Sallustro v. CannaVest*,
   93 F. Supp. 3d 265 (S.D.N.Y. 2015)...................................................................... 8

*Schueneman v. Arena Pharm., Inc.*,
   No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373 (S.D. Cal. Aug. 8, 2011) ............ 8

*Stein v. Match Grp., Inc.*,
   2016 U.S. Dist. LEXIS 74995 (N.D. Tex. 2016).................................................... 3

*Stirman v. Exxon Corp.,*
   280 F.3d 554 (5th Cir. 2002) ............................................................................ 10

*In re Stitch Fix, Inc. Sec. Litig.*,
   393 F. Supp. 3d 833 (N.D. Cal. 2019) .................................................................. 12

*Takata v. Riot Blockchain, Inc.*,
   Civil Action No. 18-2293 (FLW) (TJB), 2018 U.S. Dist. LEXIS 189585 (D.N.J. Nov. 6,
   2018) .................................................................................................................. 12

*Tan v. NIO Inc.*,
    No. 19-CV-1424 (NGG) (VMS), 2020 U.S. Dist. LEXIS 36623 (E.D.N.Y. Mar. 3, 2020) .. 12

*Tarica v. McDermott Int'l, Inc.*,
    2000 U.S. Dist. LEXIS 5031 (E.D. La. 2000) ......................................................................... 10

*In re Telxon Corp. Sec. Litig.*,
    67 F. Supp. 2d 803 (N.D. Ohio 1999)............................................................................. 13, 14

*The Ezra Charitable Tr. v. Rent-Way, Inc.*,
    136 F. Supp. 2d 435 (W.D. Pa. 2001).................................................................................. 11

*Tomaszewski v. Trevena, Inc.*,
    383 F. Supp. 3d 409 (E.D. Pa. 2019) .................................................................................. 12

*Tsirekidze v. Syntax-Brillian Corp.*,
    No. CV-07-2204-PHX-FJM, 2008 U.S. Dist. LEXIS 118562 (D. Ariz. Apr. 4, 2008) ......... 13

*Villare v. Abiomed, Inc.*,
    2020 U.S. Dist. LEXIS 114684 (S.D.N.Y. June 29, 2020)................................................. 5, 6

**Statutes**

15 U.S.C. §78u-4 ............................................................................................................. *passim*

**Other Authorities**

7A Wright & Miller,
    Federal Practice and Procedure § 1764 (2008) ...................................................................... 10

## I.    PRELIMINARY STATEMENT

Movant Jason S. Hawke respectfully submits this memorandum of law in opposition to the competing motions for lead plaintiff and appointment of lead counsel. Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), courts are required to appoint a "lead plaintiff" and "lead counsel" at the outset of every class action securities fraud lawsuit under the Securities Exchange Act of 1934. 15 U.S.C. §78u-4(a)(3). The "lead plaintiff" is by statute the movant with the "largest financial interest" in the action that also satisfies the typicality and adequacy requirements of Rule 23. That movant is Mr. Hawke.

Courts within this District and throughout the country evaluate "financial interest" by using the *Lax*/*Olsten* factors. These factors generally consider the number of shares purchased by the movants, the amount of money spent on the shares, the number of shares held through the end of the class period, and the movants' approximate recoverable loss under the securities laws. Mr. Hawke's "financial interest" under these factors is larger than any of the other movants. Using the class period alleged in the *Shim* and *Link* complaints, Mr. Hawke's recoverable loss is over $235,000; and using the class period alleged in the *Cody* complaint, his recoverable loss increases to approximately $533,866.[1] Thus, even though the class period alleged in the *Cody* complaint appears to be improper and need not be considered (as explained below in greater detail), Mr. Hawke unquestionably possesses the "largest financial interest" under any analysis.

Mr. Hawke also meets the typicality and adequacy requirements under Rule 23. He is an experienced investor who owns and operates a registered investment advisory firm. He has hired

---

[1] All parties agree that the *Shim*, *Link*, and *Cody* actions should be consolidated notwithstanding the difference in class periods. The actions allege virtually identical allegations against the same defendants. The change in class period between the *Cody* action and the *Shim* and *Link* actions is the only difference but does not interfere with, or stand in the way of, consolidation. *See* ECF Nos. 10, 12, 14 (motions seeking consolidation).

attorneys in the past for routine business matters relating to securities as well as real estate and estate planning matters. Mr. Hawke also retained Levi & Korsinsky, LLP as his attorneys, which underscores his adequacy to serve as the lead plaintiff given the law firm's reputation and expertise in the field of securities litigation.

As the movant with the "largest financial interest" in the action who also satisfies the Rule 23 requirements, Mr. Hawke is by statute the presumptive lead plaintiff. He presents none of the adequacy issues accompanying the other movants, namely the "gamesmanship" and inadequacy flaws associated with the competing motion filed by The Freedom Business Trust and The Life Trust. These two trusts, who appear to be completely unrelated other than the fact they were introduced to each other by their lawyers, had virtually no losses under the class periods alleged in the *Shim* and *Link* complaints; indeed, when considering only their purchases in the initial class period, these trusts collectively purchased a mere 200 shares and at most sustained a loss of just a few hundred dollars. Only by expanding the class period on the eve of the PSLRA's 60-day deadline were these two trusts able to show a loss. As explained in detail below, this conduct presents a host of issues that preclude The Freedom Business Trust and The Life Trust from being appointed as the lead plaintiffs in this lawsuit.

## II.    ARGUMENT

### A.    The PSLRA Process

The PSLRA sets forth the procedure for the selection of a Lead Plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). Following the required notice announcing the class action, class members interested in serving as Lead Plaintiff are required to file a motion seeking appointment within 60 days thereafter. 15 U.S.C. §78u-4(a)(3)(A)(i). This straightforward leadership selection provides that the "person or group of persons" with the largest

2

loss is the presumptive lead plaintiff and must be appointed lead so long as it is otherwise adequate and typical within the meaning of Rule 23. 15 U.S.C. §78u–4(a)(3)(B)(i) and (iii)(I)(bb)-(cc). Congress created the lead plaintiff presumption because it believed that the movant with the largest loss would be most incentivized to actively prosecute the securities class action and monitor counsel. *See* S. Rep. No. 104-98, at 4 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 683 (Congress sought "to empower investors so that they – not their lawyers – exercise primary control over private securities litigation.").

After a presumptively most adequate plaintiff is identified, the Court must then determine if the presumption has been rebutted through "proof" by a member of the purported plaintiff class that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). If the presumption is not rebutted, the presumptively most adequate plaintiff should be appointed as lead plaintiff.

> **B.**     **Movant Jason S. Hawke Possesses the "Largest Financial Interest" in the Action Under Either of the Alleged Class Periods.**

Courts throughout the Fifth Circuit rely on the *Lax*/*Olsten* factors when evaluating "financial interests" at the lead plaintiff stage. These factors are: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *Stein v. Match Grp., Inc.,* 2016 U.S. Dist. LEXIS 74995, at *11 (N.D. Tex. 2016); *Buettgen v. Harless*, 263 F.R.D. 378, 380 (N.D. Tex. 2009); *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 440 (S.D. Tex. 2002); *see also Brody v. Zix Corp.*, 2005 U.S. Dist. LEXIS 13871, at *5-6 (N.D. Tex. 2005) (listing four factors and then focusing on the approximate losses of the movants). Importantly, when considering the "approximate losses suffered by the

3

plaintiffs" (*i.e.*, the fourth *Lax/Olsten* factor), only "recoverable" losses under the federal securities laws qualify. *See*, *e.g.*, *Marjanian v. Allied Nev. Gold Corp.*, No. 3:14-cv-0175-LRH-WGC, 2015 U.S. Dist. LEXIS 2782, at *13 (D. Nev. Jan. 8, 2015) ("To determine which plaintiff has the largest financial stake, courts consider the 'recoverable damages' of each party pursuant to *Dura Pharmaceuticals*"); *see also Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005).

Before the Court are three complaints alleging two different class periods. The first two complaints, filed by Plaintiffs Shim and Link, allege class periods of March 10, 2023 to May 31, 2023, inclusive. The third complaint, filed by Plaintiff Cody a mere two business days before the PSLRA deadline for lead plaintiff motions, alleges a class period of August 2, 2022 to June 1, 2023, inclusive. As illustrated below, Mr. Hawke possesses the "largest financial interest" in the action under the *Lax/Olsten* factors no matter which class period the Court applies.

1. *Initial Class Period – March 10, 2023 to May 31, 2023, Inclusive.*

The following table provides the respective movant's "financial interests" in the litigation under the *Lax/Olsten* factors for the class period pleaded by Plaintiffs Shim and Link:

| Movant | Gross Shares Purchased | Net Shares Purchased | Net Funds Expended | Recoverable Losses |
|---|---|---|---|---|
| Jason S. Hawke | 63,001 | 63,001 | $466,529.34 | $235,266.26 |
| Keith Link / Trevor Milkins[2] | 2,916 | 2,916 | $20,034.37 | $9,330.36 |
| Freedom Business Trust / The Life Trust | 200 | 0 | ($216,089.93) (Gain from shares sold) | $0 |

*See* Spreadsheet Loss Analysis, Exhibit A to Supplemental Declaration of Thane Tyler Sponsel III, filed herewith (providing calculations for movants under initial class period). As the above

---

[2] On August 28, 2023, movants Kieth Link and Trevor Milkins elected not to oppose Mr. Hawke's motion, effectively withdrawing their motion, ECF No. 15.

table makes clear, Mr. Hawke's "financial interest" is larger than any other movant under all the *Lax*/*Olsten* factors.

To the extent Mr. Hawke faces any opposition on this point, movants Freedom Business Trust and The Life Trust will argue that "financial interests" should be evaluated under the expanded class period filed by Plaintiff Cody two business days prior to the lead plaintiff deadline. Such an argument would be incorrect because, as here, courts will not consider expanded class periods when they appear to be "frivolous" or the result of "gamesmanship." *See Villare v. Abiomed, Inc.*, 2020 U.S. Dist. LEXIS 114684, at *11-13 (S.D.N.Y. June 29, 2020) ("numerous courts have cautioned that blindly accepting the longest class period without any inquiry may encourage attempts by potential lead plaintiffs to manipulate the class period so that they have the largest financial interest."); *see also Ragan v. Appharvest, Inc.*, 2021 U.S. Dist. LEXIS 238168, at *19 n.4 (S.D.N.Y. Dec. 13, 2021) (rejecting expanded class period where complaint was filed "day before the lead plaintiff motions were due" and appeared to be product of "gamesmanship").

The expanded class period alleged by Plaintiff Cody (whose counsel also serves as counsel for movants Freedom Business Trust and The Life Trust) is implausible from the face of the complaint. The corrective disclosure cited in all three complaints occurred on June 1, 2023 prior to the market opening, when DZS announced its restatement of financial reports for the three-month period ended March 31, 2023 and revision of guidance for fiscal 2023. The restatement and guidance revision were caused by "an accounting error relating to the timing of revenue recognition with respect to two customer projects [during the First Quarter of 2023]." *See Shim* Complaint at ¶ 26; *Link* Complaint at ¶ 25; *Cody* Complaint at ¶ 29. Therefore, according to the allegations currently before the Court, the corrective disclosure on June 1, 2023 relates to accounting issues that began during the first quarter of 2023 and not beforehand.

Contrary to these allegations, the expanded class period in the *Cody* action begins with false statements occurring on August 2, 2022; specifically, the *Cody* complaint relies on an innocuous statement from a quarterly report claiming that "there were no changes in [DZS's] internal control over financial reporting . . . ." *Cody* Complaint at ¶15. Although Plaintiff Cody alleges this statement was false, the one and only corrective disclosure alleged in the complaints does not relate to or otherwise contradict DZS's statements about its internal controls over financial reporting *prior* to the first quarter of 2023. *See Cody* Complaint at ¶29. Thus, there is no logical reason to rely on an expanded class period under the current allegations, except of course if the objective is to artificially inflate a movant's losses in an attempt to secure a lead counsel role. *See c.f. Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) (warning that "simply adopting the most inclusive class period might encourage unscrupulous movants to allege longer class periods in an effort to manipulate the lead plaintiff determination").

Two cases in particular are instructive. In *Villare*, plaintiff/movant Barry attempted to expand the class period hours before the PSLRA deadline, and in doing so inflated his losses by almost $200,000. 2020 U.S. Dist. LEXIS 114684, at *13. The court concluded that the longer class period proposed at the eleventh hour should not be used for purposes of the lead plaintiff analysis, due to concerns that the expansion was merely a product of gamesmanship. *Id*. Similarly, in *Ragan*, plaintiff/movant Plymouth County filed a complaint the day before the lead plaintiff motions were due apparently "to make it more difficult for others to compete with it to be lead plaintiff and the only reason it makes allegations regarding the Registration Statement appears to be to qualify itself to act as lead plaintiff." 2021 U.S. Dist. LEXIS 238168, at *19 n.4. Prior to the last-minute expansion, Plymouth County was not a class member as it had purchased zero shares during the

6

initial class period. *Id*. at *13. Moreover, "the Plymouth County complaint lack[ed] any allegation that would support extending the class period to the date when Plymouth County made its purchases." *Id.* at *21-22. Similar to the movants in *Villare* and *Ragan*, the expanded class period here has no factual basis and was filed a mere two business days before the lead plaintiff motion deadline (by the very same attorneys who presently represent movants Freedom Business Trust and The Life Trust and seek to be appointed lead counsel).[3]

2. *Expanded Class Period – August 2, 2022 to June 1, 2023, Inclusive.*

Even if the Court were inclined to adopt the expanded class period (which it should not), Mr. Hawke still possesses the "largest financial interest" under all the *Lax*/*Olsten* factors, as illustrated in the following table:

| Movant | Gross Shares Purchased | Net Shares Purchased | Net Funds Expended | Recoverable Losses |
|---|---|---|---|---|
| Jason S. Hawke | 158,100 | 158,100 | $1,113,745.36 | $533,866.18 |
| Freedom Business Trust / The Life Trust | 110,822 | 38,981 | $676,202.51 | $317,805.91 |
| Keith Link / Trevor Milkins | 3,461 | 3,461 | $27,162.97 | $14,468.71 |

*See* Spreadsheet Loss Analysis, Exhibit B to Supplemental Declaration of Thane Tyler Sponsel III, filed herewith (providing calculations for movants under expanded class period).

The Freedom Business Trust and The Life Trust's motion papers contradict the above table in one significant way: they claim in their motion papers to have lost $533,270.10. ECF No. 14-5,

---

[3] Scott+Scott LLP represent movants Freedom Business Trust and The Life Trust, who also represented the movants discussed above in *Villare* and *Ragan*. Respectfully, "[t]he specter of gamesmanship on these facts [should] cause[] the Court to question whether [the Freedom Business Trust and The Life Trust] will 'fairly and adequately protect the interests of the class.'" *Maliarov v. Eros Int'l PLC*, 2016 U.S. Dist. LEXIS 46082, at *10-12 (S.D.N.Y. Apr. 5, 2016) (rejecting lead plaintiff movant who filed complaint with "additional disclosure allegation[] in the eleventh hour").

p. 18. The loss figure they rely upon does not accurately reflect their "recoverable losses" under the securities laws, as required. *See Marcus v. J.C. Penney Co.,* No. 6:13-CV-736, 2014 U.S. Dist. LEXIS 197529, at \*\*12-13 (E.D. Tex. Feb. 28, 2014) (considering the *Dura* method when analyzing movant's financial interest); *Espinoza v. Whiting*, No. 4:12cv1711 SNLJ, 2013 U.S. Dist. LEXIS 6227, at \*11 (E.D. Mo. Jan. 16, 2013) (determining greatest financial interest using the *Dura* approach); *In re LightInTheBox Holding Co., Sec. Litig.*, 2013 U.S. Dist. LEXIS 165842, at \*10 (S.D.N.Y. Nov. 21, 2013) (applying the *Dura* methodology to calculate greatest financial interest); *Schueneman v. Arena Pharm., Inc.*, No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373, at \*1 (S.D. Cal. Aug. 8, 2011) ("it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed.").

Indeed, in the eighteen years after *Dura*, courts in nearly every jurisdiction across the country have concluded that if "the purchaser sells the shares . . . *before* the relevant truth beings to leak out, the misrepresentation *will not have led to any loss*." *Dura*, 544 U.S. at 342 (emphasis added); *see also Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 476 (S.D.N.Y. 2016) ("[I]n evaluating financial loss, courts must consider only those losses proximately caused by the defendant's misrepresentations or other fraudulent conduct."); *Eichenholtz v. Verifone Holdings, Inc.,* No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at \*11 (N.D. Cal. Aug. 22, 2008) ("loss causation can only be demonstrated with respect to shares retained as of the date of the corrective disclosure") (emphasis added); *Sallustro v. CannaVest*, 93 F. Supp. 3d 265, 275 (S.D.N.Y. 2015) ("*Dura* [and its progeny] . . . require a court to make pre-discovery loss causation determinations . . . that are based on the facts alleged in the complaint"); *Foster v. Maxwell Techs., Inc.,* Nos. 13-cv-00580-BEN-RBB, 2013 U.S. Dist. LEXIS 154538, at \*10 (S.D. Cal. Oct. 24, 2013) ("The

misrepresentation does not lead to a loss if the purchaser sells the shares before the truth is revealed.") (emphasis added).

The *only* corrective disclosure alleged in any of the complaints (including the *Cody* Complaint) is the one occurring on June 1, 2023 prior to the market opening, when DZS announced its restatement of financial reports for the three-month period ended March 31, 2023 and revision of guidance for fiscal 2023. *See Shim* Complaint at ¶ 26; *Link* Complaint at ¶ 25; *Cody* Complaint at ¶ 29. The Freedom Business Trust and The Life Trust sold the vast majority of their shares *prior* to this corrective disclosure; in fact, out of the 110,822 shares they collectively purchased, they sold over 70,000 of the shares prior to the corrective disclosure. Thus, any losses they sustained on those shares are not recoverable in this action and should not have been included in their "financial interest" analysis. *See*, *e.g.*, *Allied Nevada*, 2015 U.S. Dist. LEXIS 2782, at *13 ("To determine which plaintiff has the largest financial stake, courts consider the 'recoverable damages' of each party pursuant to *Dura Pharmaceuticals*").[4]

### C.      Mr. Hawke Satisfies the Requirements of Rule 23.

In addition to possessing the greatest financial interest, Mr. Hawke satisfies the typicality and adequacy requirements of Rule 23. Mr. Hawke is identically situated to, and therefore typical

---

[4] Even if the Court were inclined to consider these unrecoverable losses for the sake of argument, Mr. Hawke still claims a greater loss (albeit by only a few hundred dollars, *i.e.*, $533,866.18 vs. $533,270.09) and possesses a significantly larger "financial interest" under the remaining three *Lax*/*Olsten* factors. *See City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, No. 17 CV 1677, 2017 U.S. Dist. LEXIS 199868, at *9 (N.D. Ohio Dec. 4, 2017) ("[T]he Court finds that the difference in the approximate losses does not overcome the combined weight of the first three factors"); *Pio v. General Motors Co.*, No. 14-11191, 2014 U.S. Dist. LEXIS 151205, at *11 (E.D. Mich. Oct. 24, 2014) (the Court "declines the invitation to ignore all but the fourth *Lax* factor in deciding which movant has the largest financial interest in this litigation"); *Alkhoury v. Lululemon Athletica, Inc.,* No. 13 Civ. 4596, 2013 U.S. Dist. LEXIS 144105, at *3-4 (S.D.N.Y. Oct. 1, 2013) (appointing movant that had smaller loss because first three factors weighed in its favor).

9

of, the rest of the class. The circumstances surrounding his losses are not "markedly different" from the absent class members. *See In re OCA, Inc.,* 2008 U.S. Dist. LEXIS 84869, at *27-28 (E.D. La. 2008) (citing 7A Wright & Miller, Federal Practice and Procedure § 1764 (2008)). Mr. Hawke, like all class members, purchased DZS securities during the Class Period at prices that were artificially inflated as a result of Defendants' alleged fraud, and retained those shares past the corrective disclosure, thereby suffering significant losses. *In re Enron,* 206 F.R.D. at 441 ("typicality is achieved where the named plaintiffs' claims arise from the same event or course of conduct that gives rise to claims of other class members….") (internal citations omitted).

Furthermore, Mr. Hawke relies on the same legal theories as the rest of the class. With regard to typicality, the Fifth Circuit has stated:

> [The typicality requirement] focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent. Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.

*Stirman v. Exxon Corp.,* 280 F.3d 554, 562 (5th Cir. 2002); *In re Cobalt Int'l Energy, Inc. Sec. Litig.,* 2017 U.S. Dist. LEXIS 91938, at *10 (S.D. Tex. 2017) (typicality satisfied where class representatives' claims "share the same legal theory" with class members); *In re Plains All Am. Pipeline, L.P. Sec. Litig.,* 2015 U.S. Dist. LEXIS 163811, at *11 (S.D. Tex. 2015) ("The typicality requirement focuses less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of the legal and remedial theories behind their claims.") (internal citations omitted). Thus, Mr. Hawke has established the requisite *prima facie* showing with regard to typicality.

The adequacy element of Rule 23 requires that: "[class] counsel [ ] be qualified, experienced, and able to prosecute the action vigorously and [that] the class representatives must

10

not have interests antagonistic to the class members." *Tarica v. McDermott Int'l, Inc.,* 2000 U.S. Dist. LEXIS 5031, *14 (E.D. La. 2000); *see also In re Lease Oil Antitrust Litig.,* 186 F.R.D. 403, 421 (S.D. Tex. 1999) (adequacy inquiry is broken down into "essentially two parts--one relating to the class representatives and the other to the class counsel: (1) the counsel must be qualified and experienced, and (2) the representatives must not have antagonistic interests with class members.") (internal citations omitted). Thus far Mr. Hawke has taken several steps to evidence his adequacy. As stated in his opening motion, Mr. Hawke resides in Meridian, Idaho, and possesses a degree in Physical Science relating to Zoology. ECF No. 12, p. 10. He is the owner and CEO of several companies, including Hawke Financial Group LLC, a registered investment advisor firm, Warbird Management LLC, and Integrated Wealth Concepts LLC. *Id.* Mr. Hawke considers himself an experienced investor as he has been investing in the stock market for 25 years. *Id.* Moreover, he also has experience hiring and overseeing attorneys for multiple matters. *Id.* Further, his selection of experienced and capable counsel in Levi & Korsinsky, demonstrates that Mr. Hawke will adequately represent the interests of the proposed class.

Mr. Hawke also has none of the adequacy issues presented by The Freedom Business Trust and The Life Trust. Courts around the country routinely scrutinize movant-groups consisting of individuals with no preexisting relationship. *See*, *e.g.*, *In re Cendant Corp. Litigation*, 264 F.3d 201, 266-67 (3d Cir. 2001) ("a court were to determine that the movant 'group' with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude, based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner"); *The Ezra Charitable Tr. v. Rent-Way, Inc.,* 136 F. Supp. 2d 435, 444-45 (W.D. Pa. 2001) ("The aggregation of disparate investors solely for the purpose of establishing a plaintiff group is contrary to the purposes of the PSLRA,

11

and has been strongly disfavored by the courts."). As such, "when evaluating group plaintiffs, movants must show their cohesiveness and independence from proposed counsel, including 'how and when they were joined together, how they intend to conduct discovery or how they will coordinate litigation efforts and strategy.'" *Takata v. Riot Blockchain, Inc.*, Civil Action No. 18-2293 (FLW) (TJB), 2018 U.S. Dist. LEXIS 189585, at *15 (D.N.J. Nov. 6, 2018); *see also Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2018 U.S. Dist. LEXIS 41120, at *13 (S.D.N.Y. Mar. 13, 2018) ("Groups with unrelated members must, however, provide evidence that they will function cohesively and thus best serve the class.").

The Freedom Business Trust and The Life Trust do not have any pre-existing relationship with one another. Instead, their relationship is due solely to "the efforts of lawyers hoping to ensure their eventual appointment as lead counsel." *Cendant*, 264 F.3d at 267. This strikes heavily against the "adequacy" of the group and suggests they cannot be "counted on to monitor counsel in a sufficient manner." *Id*. Even courts that have taken a more permissive view on unrelated groups have nonetheless required evidence of "informed communication among the members as to forming a group [that] need only predate the motions for appointment as lead plaintiff." *Tomaszewski v. Trevena, Inc.,* 383 F. Supp. 3d 409, 416 (E.D. Pa. 2019). The Freedom Business Trust and The Life Trust completely fail in this regard by submitting nothing to evidence any pre-existing relationship or communication prior to the filing of their motion, other than the mere signing of a boilerplate "certification" required by the PSLRA. Without even having had a phone call with each other, they cannot even rely on the "'vague discussions of general communication protocols and status reports hashed out over preliminary conference calls . . . [and] boilerplate plans for cooperation'" that numerous courts have held are insufficient to "establish that proposed group would work effectively and cohesively as lead plaintiff." *Tan v. NIO Inc.*, No. 19-CV-1424

12

(NGG) (VMS), 2020 U.S. Dist. LEXIS 36623, at *14 (E.D.N.Y. Mar. 3, 2020) (collecting cases); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) ("The declaration allegations are conclusory and cursory, and indicate only that the group members . . . have exchanged a few calls and emails with each other since being introduced by their common lawyer.").

The Freedom Business Trust and The Life Trust also appear to have retained three separate law firms to represent them in this action, though they provide no explanation why and fail to describe the relationship between the firms or provide the reasoning behind their decision to encumber the class with three law firms, in addition to the retention of local counsel. This suggests further that their decision to seek appointment as co-lead plaintiff was in fact a decision made by counsel and not themselves. *See generally Chao Sun v. Han*, Civil Action No. 15-703, 2015 U.S. Dist. LEXIS 64060, at **11-12 (D.N.J. May 14, 2015) (noting that the declarations "fail to indicate a pre-existing relationship" or that the individuals "even know each other" and stating that the court "takes issue with" whether "the group was created by the efforts of lawyers for the purpose of obtaining lead plaintiff status").

"[T]he clear implication is that [The Freedom Business Trust and The Life Trust's three law firms], rather than the [group's members], are steering the litigation" and that the pairing is exactly the lawyer-driven group "unbound by any allegiance to one another" that the PSLRA sought to prevent. *Tsirekidze v. Syntax-Brillian Corp.,* No. CV-07-2204-PHX-FJM, 2008 U.S. Dist. LEXIS 118562, at *15 (D. Ariz. Apr. 4, 2008); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 811 (N.D. Ohio 1999). "[T]o allow a mélange of unrelated persons to serve as the lead plaintiff, especially if multiple law firms are to represent their interests," would be antithetical to the PSLRA because "[s]uch a 'group' would be a 'lead plaintiff' in name only; in substance, those

13

individuals would essentially constitute a collection of lead plaintiffs, unbound by any allegiance to one another and unlikely to function as a unified whole" and the "Court would be left with little assurance that the 'group' speaks with a collective voice." *Telxon*, 67 F. Supp. 2d at 811.

### D.     Mr. Hawke Is the Presumptive Lead Plaintiff.

Mr. Hawke has the "largest financial interest" of all the movants in the relief sought by the class and otherwise satisfies the requirements of Rule 23. He is therefore the presumptive "most adequate plaintiff" within the meaning of the PSLRA. To overcome this presumption, the PSLRA requires "proof" that the presumptive movant is inadequate or subject to a unique defense. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). This the competing movants cannot do, as no such proof exists in this case.

## III.   CONCLUSION

For the foregoing reasons, Mr. Hawke respectfully requests that the Court grant his Motion and enter an Order: (1) consolidating the Actions, (2) appointing Mr. Hawke as Lead Plaintiff, (3) approving his selection of Levi & Korsinsky as Lead Counsel for the Class and Sponsel Miller as Liaison Counsel, and (4) granting such other relief as the Court may deem just and proper.

Dated: August 28, 2023                    Respectfully submitted,

                                          **SPONSEL MILLER GREENBERG PLLC**

                                          */s/ Thane Tyler Sponsel III*
                                          Thane Tyler Sponsel III
                                          Texas Bar No. 24056361/Federal ID No. 690068
                                          Roger B. Greenberg
                                          Texas Bar No. 08390000/Federal ID No. 3932 50
                                          Briar Hollow Lane, Suite 370 W
                                          Houston, Texas 77027
                                          Telephone: (713) 892-5400
                                          Facsimile: (713) 892-5401
                                          sponsel@smglawgroup.com
                                          roger@smglawgroup.com

14

*Liaison Counsel for Jason S. Hawke and Proposed*
*Liaison Counsel the Class*

**LEVI & KORSINSKY, LLP**
Adam M. Apton (*pro hac vice* forthcoming)
55 Broadway, 4th Floor
New York, New York 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel for Jason S. Hawke and Proposed*
*Lead Counsel for the Class*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY certify that on August 28, 2023, I electronically filed the foregoing document

with the Clerk of the Court CM/ECF.

<u>*/s/ Thane Tyler Sponsel III*</u>
Thane Tyler Sponsel III

15