# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| JASON SHIM, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  v.<br><br>DZS INC., CHARLES DANIEL VOGT, and MISTY KAWCKI,<br><br>      Defendants. | No. 4:23-cv-00549-SDJ |
| KEITH LINK, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  v.<br><br>DZS INC., CHARLES DANIEL VOGT, and MISTY KAWCKI,<br><br>      Defendants. | No. 4:23-cv-00603-SDJ |
| ROBERT CODY, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  v.<br><br>DZS INC., CHARLES DANIEL VOGT, and MISTY KAWCKI,<br><br>      Defendants. | No. 4:23-cv-00713-SDJ |

## FREEDOM BUSINESS TRUST AND LIFE TRUST'S SUPPLEMENTAL BRIEF RESPONDING TO THE COURT'S OCTOBER 25, 2023 ORDER

**INTRODUCTION**

As recognized by the Court's order for supplemental briefing, *see* ECF No. 24, the two competing movants for appointment of lead plaintiff – the Freedom Business Trust and Life Trust ("the Trusts") and Jason Hawke ("Hawke") – have competing views on the relevant class period (in addition to the Trusts' position that Hawke is disqualified due to his "dishonest and wrongful" conduct, *see* ECF No. 17 at 4-7).[1]  The Trusts' position is that the longer class period spanning from August 2, 2022 to June 1, 2023 (the "Long Class Period") is the relevant class period, and that using the Long Class Period, they and competing movant Hawke have approximately the same financial loss in this case such that either could reasonably be considered the "presumptive lead plaintiff" under the case law.  *See* Trusts' Opp. (ECF No. 17) at 2-4.

The Long Class Period is the correct class period for purposes of the present leadership motions, not the short class period spanning from March 10, 2023 to May 23, 2023 (the "Short Class Period").  When considering leadership motions under the PSLRA, district courts in the 5th Circuit and elsewhere use the longer proposed class period unless it is "obviously frivolous." Here, the Long Class Period is not obviously frivolous.  To the contrary, as explained further below, the Long Class Period is both reasonable and supported by the evidence.

Accordingly, for the reasons stated herein and as set forth in the Trusts' earlier-filed papers, the Court should grant the Trusts' lead plaintiff motion in full.

---

[1] Among other things, Hawke has engaged in unauthorized securities transactions in violation of the law and has been sued for breaching his fiduciary duty to investor clients.  *Id*.   In the Trusts' view, the law is clear that one such as Hawke cannot serve as a lead plaintiff under the PSLRA.

**ARGUMENT**

**A.    The Court Should Use the Long Class Period for Assessing Movants' Losses**

"For purposes of selecting a lead plaintiff, the Court will use the longest noticed class period unless the factual allegations supporting that period are 'obviously frivolous.'" *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010) (adopting the longest alleged class period and finding it "inappropriate to narrow the class period at this stage of the litigation."); *Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, No. 3:15-cv-03415-D, 2016 WL 1625774, at *4 (N.D. Tex. April 25, 2016) (adopting the longest alleged class period and finding the allegations supporting the longer class period "not obviously frivolous"); *Grand Lodge of Pa. v. Peters*, No. 8:07-cv-479-T26-EAJ, 2007 WL 1812641, at *2 (M.D. Fla. June 22, 2007) ("[Lead Plaintiff movant] asks this Court to delve into the merits of the claims and to define the class period at this early stage of the proceedings before a class has been certified or those issues have been fully briefed.  This it cannot do."); *Miller v. Dyadic Int'l, Inc.*, No. 07-80948-CIV, 2008 WL 2465286, at *4 (S.D. Fla. Apr. 18, 2008) (using "the longest, most inclusive class period is appropriate at this stage in the litigation because 'it encompasses more potential class members'"); *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008) ("it would be premature for the court to use a class period that disregards damages potentially suffered due to [defendant's] alleged misrepresentation").

Here, the Court should use the Long Class Period because it is not "obviously frivolous." To the contrary, the Long Class Period is supported by the evidence and is reasonable.  This action arises out of the fact that DZS Inc. ("DZS"), a provider of fiber access and optical telecommunications networking and cloud software technology, was admittedly operating without adequate financial controls and was misstating its financial results during the Long Class Period.

*See* Cody Action, ECF No. 1 (Complaint), ¶20 and ¶29.  Specifically, on March 10, 2023, DZS admitted in its annual report that – ***as of December 31, 2022*** – the Company had a "material weakness in internal control over financial reporting" and that the Company's "disclosure controls and procedures were not effective." ¶20.  On June 1, 2023, the Company admitted that its financial results for the first three months of 2023 were materially incorrect and would have to be restated. ¶29.  The Company's review of its financial statements is ongoing and it may be forced to make additional revisions.  *Id*.  ("The description in this report of the accounting error, the required adjustments and the expected impacts of the restatement are preliminary, unaudited and subject to further change in connection with the ongoing review of the accounting error and the completion of the restatement.  Accordingly, there can be no assurance that the actual effects of the restatement will be only as described above.").

The Company's admission that it was operating without effective financial disclosure controls demonstrates that the Long Class Period is plainly not frivolous.  The Company determined in connection with preparation of its annual report that it lacked effective financial disclosure controls as of December 31, 2022. ¶20.  The Company further admitted that the lack of financial disclosure controls led to a "material error" in "recorded revenue" related to a transaction that occurred in the Fourth Quarter of 2022. *Id.*  The "Fourth Quarter of 2022" began on October 1, 2022.  Thus, the question is whether it is "obviously frivolous" to allege that DZS lacked effective financial disclosure controls on August 2, 2022, two months earlier.  The answer is no, because based on the foregoing, it is plausible that DZS's financial controls, including its admitted material weakness, were substantially the same on August 2, 2022, as they were on October 1, 2022.  Public companies' financial disclosure controls are a relatively complex set of rules and processes supported by multiple employees with specialized skills.  As such, they do not

3

change quickly or often.  Moreover, there are no public facts indicating that DZS's financial disclosure controls substantially deteriorated between August and October 2022.  Rather, DZS stated that it identified the problem in the fourth quarter and does not specify when the problem first commenced.  *See id.*  And it is not obviously frivolous that the defendants made a material misrepresentation as early as August 2, 2022, when Defendants Vogt and Kawecki attested that the Company "[d]esigned such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles." ¶16.  This statement was false and misleading in light of the allegation that DZS lacked adequate financial disclosures at that time.  ¶18.[2]

These type of facts provide ample basis to plead a securities claim.  *See, e.g.*, *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1023 (N.D. Cal. 2020) (sustaining complaint where "plaintiffs allege that [the company] was operating with material weaknesses in its internal controls over financial reporting that it failed to disclose truthfully to investors"); *see also In re Arthrocare Corp.*

---

[2]     Hawke's throwaway argument that the Long Class Period should be ignored because the material weakness in internal controls identified by the Company in March 2023 for the period ended December 31, 2022 is "entirely unrelated" to the Company's disclosure in June 2023 concerning its need to restate its financials for the three months ended March 2023, ECF No. 25 at 9 n.1, ignores that both admissions relate to DZS's deficient internal controls and material weaknesses with regard to how it recognizes revenue.  *Compare* Cody Action, ECF No. 1 at ¶20 ("In reviewing the accounting for the revenue transaction, our management identified a deficiency in the effectiveness of a control intended to properly document and review relevant facts ***in connection with revenue recognition***) *with* ¶29 ("…the Audit Committee of the Board of Directors of DZS, Inc., in consultation with the Company's management, determined that the Company's previously issued unaudited condensed consolidated financial statements as of and for the three months ended March 31, 2023 contained an accounting error ***relating to the timing of revenue recognition***…").  Thus, contrary to Hawke's representation otherwise, both are intimately related, further countenancing use of the Long Class Period.

4

*Sec. Litig.*, 726 F. Supp. 2d 710 (W. D. Tex. 2010) ("The Court agrees with Plaintiff the Restatement may show the falsity of prior information, even non-financial information."); *In re Grupo Televisa Sec. Litig.,* 368 F. Supp. 3d 711, 720 (S.D.N.Y. 2019) ("Misstatements made in its certifications concerning the design and efficacy of internal controls are actionable."). Thus, the Long Class Period is not "obviously frivolous."

Hawke has no basis to argue to the contrary. Here, as in *Eichenholtz*, the self-serving, shorter class period advocated for by Hawke, which does not begin until 2023, ignores the evidence concerning DZS's lack of internal controls in 2022 and overlooks actionable misstatements made by defendants. Hawke's position is a significant disservice to investors and putative Class members because, at the very outset of the case and without apparent basis, it prevents many individuals – those who purchased during the earlier parts of the Long Class Period – from recovering. *See id*., 2008 WL 3925289, at *2 (". . . it is unclear why a plaintiff would argue for a shorter class period at this stage . . . ***unless it was in the best interest of that particular plaintiff only.***"). In this regard, Hawke's argument here is additional evidence, on top of his admittedly dishonest prior conduct and alleged fraud against his investor clients, that Hawke is not a suitable fiduciary or lead plaintiff.

Moreover, Hawke's heavy reliance on *Ragan v. AppHarvest, Inc*. is misguided. No. 21-CV-7985, 2021 WL 909116 (S.D.N.Y. Dec. 13, 2021). In fact, *AppHarvest* serves as a warning against consideration of the shorter class period at this early stage of the litigation, particularly given the positions taken in that case by Hawke's own counsel here, Levi & Korsinsky LLP. In *AppHarvest*, two complaints were filed with one alleging a class period of May 17, 2021 to August 10, 2021 and the other alleging a class period of October 9, 2020 to August 10, 2021. *Id.* at *5-*6. Like here, at the lead plaintiff appointment stage, Levi & Korsinsky, LLP, argued against

consideration of the longer class period claiming, for example, that the complaint lacked any allegations that would support extending the class period earlier. Then, after being appointed lead counsel, they filed an amended complaint asserting wrongdoing going back to October 2020, directly contradicting their argument from their leadership motion that it was "obviously frivolous" to plead a class period extending to October 2020. *See* Laughlin Decl., Ex. A, ¶¶35 and 37, 38 (collecting testimony from former employees who worked at the company in October 2020); ¶¶78-80, 82-8, 108, 151, (alleging undisclosed problems that existed in October 2020). It is concerning that Levi & Korsinsky LLP appears to be trying the same approach here, and if anything, this undermines the credibility of their argument against the Long Class Period.

## B.      The Trusts and Hawke's Losses Are Roughly Equal

Using the Long Class Period, the movants' losses are roughly equal, and the proverbial tie goes to the movant that ***does not*** have admitted past conduct that is "dishonest and wrongful." The Trusts' estimated loss using the Long Class Period is $533,270. ECF No. 14-5. Hawke's claimed loss is less than $600 higher at $533,866. ECF No. 16 at 1. These losses are roughly equal under the case law. *Randall v. Fifth Street Financial Corp.*, No. 15-CV-7759, 2016 WL 462479, **2-3 (S.D.N.Y. Feb. 1, 2016) (Holding movants had "approximately equal" financial loss where there was 18% difference in alleged losses and holding that "[a]s the difference among competing plaintiffs' alleged losses shrinks, so too does the persuasiveness of the presumption. Indeed, some courts have declined to afford this presumption to movants – particularly individual investors – when the difference between their alleged losses and those of competing movants – particularly institutional investors – was "minimal."); *Police & Fire Retirement System of City of Detroit v. SafeNet, Inc.*, No. 06-CV-5797, 2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007) (holding that "[t]he very slight difference, however, between the Groups' losses – the Public Retirement Group's loss

is only 2% below those allegedly suffered by the Pension & Annuity Group – cannot dictate such an important result" and "treat[ing] these losses as roughly equal"); *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 338 (S.D.N.Y. 2005) (holding that where damage calculations differed by less than 2%, "[g]iven the probable margin of error involved in the damage estimates before the Court, [the two Groups] have roughly equal damages").  Because alleged losses are roughly equal, the Court should appoint the movant that would best serve the interests of the Class, here, the Trusts.

Recognizing the insignificant difference (*i.e.*, a mere $600, or 1/10 of a percent) between Hawke's and the Trusts' estimated losses, Hawke abandoned the loss analysis presented in his opening motion and began advocating for a very different approach.  Rather than the standard last-in-first-out ("LIFO") analysis Hawke and the Trusts both initially presented, Hawke argued in his opposition (ECF No. 16 at 4, 8-9), that the Court should evaluate financial interest applying the loss causation principles articulated by the Supreme Court in *Dura Pharms. v. Broudo*, 544 U.S. 336 (2005), a decision that Hawke did not even cite in his opening brief.

Hawke's argument fails for two separate reasons.  *First*, courts have exhibited skepticism when, as is the case here, a movant asserts that losses should be calculated using a new methodology in response to the realization that the movant's previous methodology would result in an undesired outcome.  *See, e.g.*, *City of Sunrise*, 2021 WL 396343, at *4 (S.D.N.Y. 2021) ("Presenting new methodologies, loss calculations, or substantive allegations only in opposition, after the PSLRA deadline for moving to be appointed lead Plaintiff has closed, is the type of opportunism that is generally unfavored in appointing lead plaintiffs."); *Marquez v. Bright Health Grp., Inc.*, 2022 WL 1314812, at *6 (E.D.N.Y. Apr. 26, 2022) (where movant proposed new loss methodology for the first time in opposition papers, finding that the movant's argument was

7

"opportunistic," and that "'[t]his fact alone counsels in favor of adopting the LIFO methodology . . .'").

*Second*, while some courts do incorporate *Dura* into lead plaintiff analyses, there is no need to depart from the LIFO approach here because, irrespective of what methodology is used to calculate financial interest, Hawke remains inadequate and atypical under Rule 23.  It remains uncontested that the State of Idaho found that Hawke "***willfully***" committed a "***dishonest and unethical practice***," in violation of Idaho state law and FINRA rules, and that, on at least nine separate occasions, complaints were filed by former Hawke clients alleging misrepresentation, common law fraud, and breach of fiduciary duty.  Each act independently disqualifies Hawke from being appointed Lead Plaintiff as each one "subject[s him] to unique defenses that might imperil certification of [the] [C]lass."  *Newman v. Eagle Bldg. Techs*., 209 F.R.D. 499, 504 (S.D. Fla. 2002); *Sneed v. AcelRx Pharmaceuticals, Inc.*, No. 21-cv-04353, 2021 WL 5964596, at *4 (N.D. Cal. Dec. 16, 2021) (proposed lead plaintiff previously indicted for embezzlement and convicted of wire fraud not adequate); *Villare v. ABIOMED, Inc.*, No. 19-Civ-7319, 2020 WL 3497285, at *7 (S.D.N.Y. June 29, 2020) (disqualifying proposed lead plaintiff previously convicted of health care fraud); *Xianglin*, 2005 WL 1561438, at *4 (rejecting movant previously convicted of providing false information to a financial institution); *In re Network Assoc., Inc. Sec. Lit.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (fraud investigation was a "major negative" to appointment as lead plaintiff, holding "the Court is unwilling to install an enterprise under such a cloud in a position of trust and confidence").

Considered together, they leave no doubt that Hawke is unfit to serve as a fiduciary, especially of a Class alleging that Defendants misrepresented the truth about DZS's business, operations and financial condition in violation of United States securities laws and related

Securities and Exchange Commission rules and regulations.   Likewise, Hawke's persistent hostility toward potential Class members who purchased DZS securities before March 10, 2023 and after May 31, 2023, solidifies his inadequacy. *Deering v. Galena Biopharma, Inc.*, No. 3:14-CV-00367, 2014 WL 4954398, at *7 (D. Or. Oct. 3, 2014) (advocacy for shorter class period rendered lead plaintiff movant inadequate to represent the entire class).   Consequently, whether the Court assesses Hawke's and the Trusts' financial interests based on their respective LIFO losses as initially presented, or entertains Hawke's invitation to consider their losses under an alternative methodology presented after the PSLRA deadline for moving to be appointed lead Plaintiff closed, the end result is the same – Hawk is inadequate and atypical and the Trusts are the only movant appropriate to serve as Lead Plaintiff in this Action.

## CONCLUSION

For the foregoing reasons and those set forth in their Opening, Opposition, Reply and Surreply Briefs, the Trusts respectfully request that the Court grant their Motion and deny Hawke's motion.

DATED:  November 8, 2023          Respectfully submitted,

    *s/ Thomas L. Laughlin, IV* (*by Andrea L. Fair with permission*)
Thomas L. Laughlin, IV (*pro hac vice* forthcoming)
Rhiana L. Swartz (*pro hac vice* forthcoming)
Jonathan Zimmerman (*pro hac vice* forthcoming)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
tlaughlin@scott-scott.com
rswartz@scott-scott.com
jzimmerman@scott-scott.com

9

Ivy T. Ngo (*pro hac vice* forthcoming)
Brian J. Schall (*pro hac vice* forthcoming)
Rina Restaino (*pro hac vice* forthcoming)
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: 310-301-3335
Facsimile:  310-388-0192
ivy@schallfirm.com
brian@schallfirm.com
rina@schallfirm.com

*Counsel for Lead Plaintiff Movant Freedom Business Trust and Life Trust and Proposed Co-Lead Counsel for the Class*

Of Counsel:

Andrea L. Fair
Texas State Bar No. 24078488
andrea@wsfirm.com
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: 903-757-6400
Facsimile:  903-757-2323

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 8, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

<u>*s/ Thomas L. Laughlin, IV* (*by Andrea L. Fair with permission*)</u>
Thomas L. Laughlin, IV