UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JASON SHIM, Individually and On Behalf of All Others Similarly Situated | § § § § | CIVIL NO. 4:23-CV-549-SDJ<br>LEAD CASE |
| KEITH LINK, Individually and On Behalf of All Others Similarly Situated | § § § § | CIVIL NO. 4:23-CV-603-SDJ |
| ROBERT CODY, Individually and On Behalf of All Others Similarly Situated<br><br>v.<br>DZS INC., ET AL. | § § § § § § § | CIVIL NO. 4:23-CV-713-SDJ |

## MEMORANDUM OPINION AND ORDER

Before the Court are three related securities class actions (the "Related Actions") brought on behalf of persons or entities who purchased or otherwise acquired securities from Defendant DZS, Inc.[1] The Court consolidated the Related Actions, (Dkt. #22), and now has pending two competing motions for appointment as lead plaintiff and approval of lead counsel, filed by Jason S. Hawke, (Dkt. #12), and The Freedom Business Trust and The Life Trust (the "Trusts"), (Dkt. #14).[2] Having

---

[1] The Related Actions are *Shim v. DZS, Inc.*, No. 4:23-CV-549 (E.D. Tex. filed June 14, 2023) (the "*Shim* Action"), *Link v. DZS, Inc.*, No. 4:23-CV-603 (E.D. Tex. filed June 27, 2023) (the "*Link* Action"), and *Cody v. DZS, Inc.*, No. 4:23-CV-713 (E.D. Tex. Aug. 9, 2023) (the "*Cody* Action").

[2] Keith Link and Trevor Milkins also moved for appointment as co-lead plaintiffs and approval of counsel, (Dkt. #10), but they later filed a notice of non-opposition to Hawke and the Trusts' motions, (Dkt. #15).

1

considered the motions and the applicable law, the Court **GRANTS** Hawke's motion and **DENIES in part** the remaining motions.

## I. BACKGROUND

Plaintiffs in the Related Actions sued under the Private Securities Litigation Reform Act ("PSLRA") against DZS, Inc., its President and CEO, and its CFO. Plaintiffs allege that Defendants violated federal securities laws by making materially false and misleading statements concerning DZS's internal financial reporting controls. Upon motion and after finding that the Related Actions share common questions of law and fact, the Court consolidated the actions. (Dkt. #22).

Despite their similarities, the actions allege two different class periods. The complaint in the *Cody* Action proposes a class period that begins August 2, 2022 ("Long Class Period"). On that day, DZS filed a report with the SEC claiming that "there were no changes in [DZS's] internal control over financial reporting that occurred during [DZS's] last fiscal quarter that have materially affected, or are reasonably likely to materially affect, [DZS's] internal control over financial reporting." According to the complaint, this statement was false, as DZS allegedly had ongoing and undisclosed issues with its internal financial reporting controls.

In contrast, the complaints in the *Shim* Action and *Link* Action propose a class period beginning March 10, 2023 ("Short Class Period"). This period begins when DZS issued its 2022 Annual Report, which identified a "material weakness in internal control over financial reporting," namely revenue recognition. The complaints allege that DZS attributed the weakness to "unique delivery terms" associated with a sale—

rather than its ineffective internal controls—thus understating the likelihood that further incidents of improper revenue recognition would occur.

Both proposed class periods end when DZS revealed financial miscalculations allegedly stemming from its faulty internal controls. On June 1, 2023, before the market opened, DZS revealed an accounting error that would force it to restate its first quarter 2023 financial statements. That same day, DZS announced that it would downwardly adjust its future earnings guidance. Plaintiffs allege that these revelations caused DZS's stock price to drop 36% on June 1, 2023. The *Cody* complaint and the *Shim* and *Link* complaints take opposite positions on whether the class period should end before or after the market opened on June 1, 2023, with the Long Class Period ending June 1, 2023, and the Short Class Period ending May 31, 2023.

On June 14, 2023, Plaintiff Shim issued a PSLRA notice to advise other potential class members of the claims alleged in the complaint and to announce that the deadline for class members to move for appointment as lead plaintiff was August 14, 2023. (Dkt. #11-3). Three separate movants sought appointment as lead plaintiff and approval of their respective choice of lead counsel under the PSLRA: Link and Milkins, (Dkt. #10); Hawke, (Dkt. #12); and the Trusts, (Dkt. #14).

Link and Milkins later filed a Notice of Non-Opposition, (Dkt. #15), conceding that they did not have the largest financial interest in the relief sought, as required by the PSLRA. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb). The Court now considers Hawke and The Trusts' competing motions.

## II. LEGAL STANDARD

The PSLRA outlines the procedure for appointing a lead plaintiff in a private securities action "that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(1). Within twenty days of filing a class action complaint under the PSLRA, the plaintiff(s) must publish a notice in a widely circulated business publication or wire service. 15 U.S.C. § 78u–4(a)(3)(A)(i). The publication should advise potential class members of, among other things, the claims asserted in the complaint, the relevant class period, and the fact that any member of the purported class may move to serve as lead plaintiff within sixty days after the date of publication. *Id.* The Court must consider each motion for appointment as lead plaintiff and appoint the movant that is "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i).

Under the PSLRA, courts must presume that the most adequate plaintiff to represent the class is the person or group of persons that (1) has filed the complaint or made a timely motion in response to a notice; (2) by the Court's determination, has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). This presumption may be rebutted if a member of the purported class proves that the presumptive lead plaintiff (1) will not fairly and adequately represent the class's interests; or (2) is subject to unique defenses. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). Once the Court determines the most adequate

plaintiff, it may approve the counsel selected and retained by the lead plaintiff. 15 U.S.C. § 78u–4(a)(3)(B)(v).

### III. DISCUSSION

#### A. Timeliness of the Notice and Lead-Plaintiff Motions

Notice of this PSLRA action was timely published on June 14, 2023, in Business Wire, a widely circulated, national-business-oriented wire service. (Dkt. #11-3). The notice provided the required information, including a description of the asserted claims, the proposed class, and notice that any putative class member could move for appointment as lead plaintiff. (Dkt. #11-3). No one has challenged the adequacy of this notice. The Court therefore finds that the initial notice requirement has been met. Both Hawke and the Trusts timely filed their motions for appointment as lead plaintiff within the PSLRA's sixty-day deadline. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa).

#### B. Largest Financial Interest

Under the PSLRA, courts must presume that the plaintiff with the "largest financial interest in the relief sought by the class" is the lead plaintiff, so long as he or she otherwise satisfies the requirements of Rule 23. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb). At the outset, the Court notes that the movants disagree about the appropriate class period in this case. On the one hand, Hawke claims that the shorter class period alleged in the *Shim* and *Link* complaints should apply (March 10, 2023, to May 31, 2023). The Trusts, on the other hand, argue that the class period alleged in the *Cody* complaint should apply (August 2, 2022, to June 1, 2023). The movants' losses vary drastically depending on the class period. But the Court need

5

not decide which class period applies: Hawke has the largest financial interest under either period.

Under the Long Class Period, Hawke's claimed loss is $533,866.18, while the Trusts' claimed loss is $533,270.10.[3] Under the Short Class Period, Hawke's claimed loss is $235,266.26,[4] while the Trusts' apparent loss is $0.[5] Thus, under either class period, Hawke has the largest financial interest and is the presumptive lead plaintiff. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb).

The Trusts argue that the Court should ignore the text of the PSLRA and instead adopt the position taken by some out-of-circuit courts that hold that "[a]s the difference among competing plaintiffs' alleged losses shrinks, so too does the persuasiveness of the presumption." *Randall v. Fifth St. Fin. Corp.*, Nos. 15-CV-7759, 15-CV-8908, 2016 WL 462479, at *3 (S.D.N.Y. Feb. 1, 2016). But this clashes with the statute's text. Under the PSLRA, the Court "*shall* adopt a presumption" that the person with the largest financial interest is the most adequate plaintiff. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I) (emphasis added). "Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171, 136 S.Ct. 1969, 195 L.Ed.2d 334 (2016). This

---

[3] Hawke argues that the Trusts' "recoverable loss[]" is over $200,000 less than their claimed loss. However, since Hawke's losses are greater than the Trusts' under any metric, the Court accepts the Trusts' claimed loss as true.

[4] The exhibit to which Hawke cites to establish his loss appears to show that his loss is $235,253.90—not $235,266.26. (Dkt. #16-2 at 2). However, both losses are larger than the Trusts' loss, so this discrepancy does not affect the outcome here.

[5] The Trusts never assert what their loss would be under the Short Class Period. However, perhaps tellingly, they have never contested Hawke's assertion that they have no loss under the Short Class Period.

is especially true when discretion is elsewhere granted in the statute—i.e., the statute includes the word "may"—as is the case here. *See, e.g.*, 15 U.S.C. § 78u–4(a)(3)(B)(vi) ("Except as the court *may* otherwise permit . . . ." (emphasis added)); *see also Kingdomware*, 579 U.S. at 172 ("When a statute distinguishes between 'may' and 'shall,' it is generally clear that 'shall' imposes a mandatory duty."); *Knapp v. U.S. Dep't of Agric.*, 796 F.3d 445, 466 (5th Cir. 2015) ("The contrast [between 'shall' and 'may'] suggests a deliberate choice by Congress to make one penalty precatory and the other mandatory.").

Hawke's losses exceed the Trusts' losses under either class period, albeit by less than $600 under the Long Class Period. But the PSLRA does not contain an exception for when the difference in losses is small, and the Court is without power to create such an exception. Accordingly, the Court determines that Hawke has the largest financial interest in the relief sought by the class and is presumed to be the lead plaintiff, so long as he satisfies the requirements of Rule 23.

**C. Typicality and Adequacy Under Rule 23**

The PSLRA requires that a presumptive lead plaintiff, in addition to having incurred the greatest financial loss, must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc). In this Rule 23 evaluation, "only the typicality and adequacy prongs . . . are relevant." *Marcus v. J.C. Penney Co.*, No. 6:13-CV-736, 2014 WL 11394911, at *5 (E.D. Tex. Feb. 28, 2014) (citation omitted). Thus, to satisfy the Rule 23 requirements under the PSLRA, a lead plaintiff must have claims or defenses that

are "typical of the claims or defenses of the class," and the lead plaintiff must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a).

Notably, when performing the Rule 23 analysis under the PSLRA, the Court "need not raise its inquiry to the level required in ruling on a motion for class certification." *Hohenstein v. Behringer Harvard REIT I, Inc.*, No. 3:12-CV-3772, 2012 WL 6625382, at *2 (N.D. Tex. Dec. 20, 2012). Rather, a movant need only make a prima facie showing that he or she satisfies the typicality and adequacy requirements of Rule 23. *Singh v. 21 Vianet Grp., Inc.*, No. 2:14-CV-894, 2015 WL 5604385, at *1 (E.D. Tex. Sept. 21, 2015).

To be "typical" of the class, the potential lead plaintiff's claim must have "the same essential characteristics as those of the other class members." *Marcus*, 2014 WL 11394911, at *5 (citation omitted), such that "the incentives of the plaintiffs are aligned with those of the class," *Hohenstein*, 2012 WL 6625382, at *3 (citation omitted). Further, a lead-plaintiff movant is adequate when he or she is "prepared to prosecute the action vigorously," and when no conflicts exist between the named plaintiffs' interests and the class members' interests. *Stein v. Match Grp.*, No. 3:16-CV-549, 2016 WL 3194334, at *5 (N.D. Tex. June 9, 2016) (citation omitted).

Hawke has made a prima facie showing that he satisfies the typicality and adequacy requirements of Rule 23 because he alleges that he shares substantially similar questions of law and fact with the members of the class and that his claims are typical of the claims of the members of the class. He also submits that he is willing

to serve as lead plaintiff by acting on behalf of other class members in directing the action.

The presumption that Hawke is the most adequate plaintiff may be rebutted only by proof that he is subject to unique defenses or that he will not adequately and fairly represent the class. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). The Trusts raise two primary arguments in this regard: (1) Hawke advocates for a shorter class period; and (2) Hawke has engaged in unethical behavior. The Court takes each in turn.

*First*, the Trusts argue that Hawke is inadequate to serve as lead plaintiff because he advocates for a shorter class period. As the Trusts point out, some Courts have viewed such efforts with skepticism. *See, e.g.*, *Marcus*, 2014 WL 11394911, at *7 ("It is unclear why a potential lead plaintiff would argue for a shorter class period, unless it was in the best interest of that particular plaintiff."). However, arguing for a shorter class period does not mean automatic disqualification. *See Doyle v. Reata Pharms., Inc.*, No. 4:21-CV-987, 2022 WL 1206580, at *8 (E.D. Tex. Apr. 22, 2022) (holding that a movant satisfied the typicality requirement even though it argued for a different class period than other class members). When "all members of the class have the same or similar injury based on the same course of conduct," a movant may still be typical and adequate, even if he argues for a shorter class period. *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F.Supp.2d 401, 421 (S.D. Tex. 2000).

Here, all class members assert injuries based on DZS's alleged false or misleading statements about its internal controls and financial reporting. Their injuries manifested when DZS issued a press release on June 1, 2023, stating that it

would restate its first quarter performance. Since Hawke alleges the same injuries based on the same course of conduct as the other members of the class, he is typical of the class and adequate to be lead plaintiff, even though he asserts that the Short Class Period should apply. The Court thus finds that Hawke's incentives are "aligned with those of the class." *Hohenstein*, 2012 WL 6625382, at *3 (citation omitted). Thus, the Trusts have failed to overcome the presumption that Hawke should be lead plaintiff.

*Second*, the Trusts argue that Hawke's previous bad acts disqualify him from serving as lead plaintiff here. As the Trusts point out, in September 2019, Idaho's Department of Finance found that Hawke violated state law and a FINRA rule by engaging in private securities transactions without giving notice to his supervisor, in violation of his employer's compliance policies. (Dkt. #17-2). The Department of Finance found that Hawke's violation was "dishonest and unethical." (Dkt. #17-2 at 5). The Trusts also point to nine complaints against Hawke that were filed with FINRA. (Dkt. #17-3 at 11–32). These complaints—all of which are resolved—allege various wrongdoings, such as misrepresentation, negligence, fraud, and breach of fiduciary duty. The Trusts argue that the violation and the complaints "subject [Hawke] to unique defenses that might imperil certification of a class in this case." (Dkt. #17 at 8) (quoting *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 504 (S.D. Fla. 2002).

Hawke and the Trusts cite numerous cases—none of which controls here—that discuss whether an individual who committed prior wrongful acts can serve as lead

plaintiff. *Compare Newman*, 209 F.R.D. at 504–05 (finding that an individual who violated federal securities laws was inadequate to serve as lead plaintiff), *with Levie v. Sears, Roebuck & Co.*, 496 F.Supp.2d 944, 950 (N.D. Ill. 2007) (finding that an individual who was sanctioned for engaging in deceptive stock transactions could still serve as class representative). On balance, the Court finds that Hawke's prior wrongful acts do not overcome the rebuttable presumption that he is the most adequate plaintiff.

The Trusts' claims of wrongdoing are not serious enough to overcome the rebuttable presumption. The various complaints have all been settled or closed with no action, meaning that their merits were never adjudicated.[6] Thus, they remain mere allegations. Further, Hawke's failure to comply with his employer's compliance policies does not represent the degree of misconduct that typically results in disqualification. For example, the cases the Trusts reference in support of disqualification involve instances of more serious misconduct than Hawke's reporting violation. *See Newman*, 209 F.R.D. at 504 (rejecting movant who was cited by the SEC for violating securities laws); *Sneed v. AcelRx Pharms., Inc.*, No. 21-CV-4353, 2021 WL 5964596, at *4 (N.D. Cal. Dec. 16, 2021) (rejecting movant who was indicted for embezzlement, pleaded guilty to fourteen counts of wire fraud, and demonstrated a lack of candor before the court); *Villare v. ABIOMED, Inc.*, No. 19 Civ. 7319, 2020 WL 3497285, at *7 (S.D.N.Y. June 29, 2020) (rejecting movant who was arrested and charged with health care claims fraud and Medicaid fraud); *Xianglin Shi v. Sina*

---

[6] One complaint's status report simply says "Denied" and indicates that the complaint is no longer pending. Thus, it appears that this complaint did not result in any sanction.

*Corp.*, No. 05 Civ. 2154, 2005 WL 1561438, at *4–5 (S.D.N.Y. July 1, 2005) (rejecting movant who was a felon convicted of providing false information to a financial institution); *In re Network Assocs., Inc., Sec. Litig.*, 76 F.Supp.2d 1017, 1029 (N.D. Cal. 1999) (rejecting movant that was under investigation for criminal fraud).

Unlike those movants, Hawke did not violate federal securities laws, he was neither indicted nor convicted of a felony, and he is not under any criminal investigation. Hawke admitted that he violated the rules, agreed to pay a $10,000 civil fine, and had his investment advisor registration suspended for thirty days. Hawke's past misconduct is not comparable to the violations described above. Additionally, "[n]othing about [Hawke's] sanction[s] indicates that he would have an antagonistic or conflicting claim, or that he would not have sufficient interest in the outcome to ensure vigorous advocacy." *Levie*, 496 F.Supp.2d at 950. In this regard, and as the Court has noted above, Hawke shares substantially similar questions of law and fact with the members of the class and his claims are typical of the claims of the members of the class. Thus, Hawke has the same incentives as the Trusts do to zealously pursue these claims against DZS. His prior bad acts do not change that.

And although the Trusts claim that Hawke's prior bad acts subject him to unique defenses that might imperil the class, they never explain what those unique defenses might be—let alone prove that such defenses would "render [Hawke] incapable of adequately representing the class." *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). Accordingly, the Trusts have failed to offer sufficient proof to overcome the presumption that Hawke should be lead plaintiff.

\* \* \* \*

Under the PSLRA Hawke is the presumptive lead plaintiff because he (1) timely moved to be appointed lead plaintiff, (2) has the largest financial interest in the relief sought by the class, and (3) meets the adequacy and typicality requirements of Rule 23. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). The Trusts have failed to rebut this presumption. Nothing about Hawke's position regarding the proper class period or his prior bad acts suggests that he "will not fairly and adequately protect the interests of the class" or that he "is subject to unique defenses that render [him] incapable of adequately representing the class." *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). For these reasons, the Court appoints Hawke as the lead plaintiff in this suit.

### D. Lead Counsel

Once the Court selects a lead plaintiff, that plaintiff can then choose lead counsel, subject to the Court's approval. 15 U.S.C. § 78u–4(a)(3)(B)(v). Hawke has retained Levi & Korsinsky, LLP as lead counsel and Sponsel Miller Greenberg PLLC as liaison counsel here and has moved for the Court's approval. (Dkt. #12). The Court has reviewed the background and experience of each firm and is satisfied that each can adequately represent the plaintiff class in this action. (Dkt. #13-4, #13-5). Levi & Korsinsky has served as lead counsel in various securities class actions that have resulted in substantial recoveries for shareholders. (Dkt. #13-4). Sponsel Miller Greenberg has many years of experience handling complex litigation, including certified class actions. (Dkt. #13-5). The Court therefore approves Hawke's selection of lead counsel and liaison counsel.

## IV. CONCLUSION

For these reasons, the Court **GRANTS** Jason S. Hawke's motion for appointment as lead plaintiff and approval of selection of class counsel (Dkt. #12), and **DENIES in part** Keith Link and Trevor Milkins's motion for appointment as co-lead plaintiffs and approval of counsel, (Dkt. #10), and the Trusts' motion for appointment as lead plaintiff and approval of co-lead counsel, (Dkt. #14).

The Court further **ORDERS** that Jason S. Hawke is appointed as lead plaintiff under the PSLRA, 15 U.S.C. § 78u–4(a)(3)(B).

The Court further **ORDERS** that Hawke's selection of Levi & Korsinsky, LLP as lead counsel and Sponsel Miller Greenberg PLLC as liaison counsel are approved pursuant to 15 U.S.C. § 78u–4(a)(3)(B)(v).

**So ORDERED and SIGNED this 26th day of February, 2025.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE