**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE DZS INC. SECURITIES LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTION | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL NO. 4:23-CV-549-SDJ<br>MASTER DOCKET |

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL AND PROCEDURAL HISTORY ........................................................................ 2

    I.    PROCEDURAL HISTORY .................................................................................... 2

    II.   THE PROPOSED SETTLEMENT .......................................................................... 4

ARGUMENT ............................................................................................................................ 5

    I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ................. 5

        A.   Standards for Preliminary Approval of a Proposed Class Action Settlement. ............... 5

        B.   Adequate Representation ..................................................................................... 7

        C.   The Settlement Is the Product of Good Faith, Informed, and Arm's-Length

        Negotiations by Experienced Counsel ................................................................. 8

        D.   The Settlement Provides Significant and Certain Benefits ............................................. 9

        E.   Settlement Class Members Are Treated Equitably Relative to One Another ............... 13

    II.   PRELIMINARY CERTIFICATION OF THE SETTLEMENT ..................................... 13

        A.   The Settlement Class Satisfies the Requirements of Rule 23(a) .................................. 13

        B.   The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ............................. 15

    III.   THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED ........................ 16

    IV.   PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ........................ 17

CONCLUSION ........................................................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
2019 WL 387409 (S.D. Tex. Jan. 30, 2019) .......................................................................... 7

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .............................................................................................................. 13

*Billitteri v. Sec. Am., Inc.*,
2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) ......................................................................... 8

*Celeste Neely v. Intrusion Inc.*,
2022 WL 17736350 (E.D. Tex. Dec. 16, 2022) ............................................................... passim

*Claudet v. Cytec Ret. Plan,*
2020 WL 3128611 (E.D. La. June 12, 2020) .......................................................................... 6

*Erica P. John Fund, Inc. v. Halliburton Co.,*
2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) .................................................................. 8, 17

*In re 3D Sys. Sec. Litig.*,
2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) ............................................................................. 11

*In re Deepwater Horizon,*
739 F.3d 790 (5th Cir. 2014) .................................................................................................. 5

*In re Dynegy, Inc. Sec. Litig.,*
226 F.R.D. 263 (S.D. Tex. 2005) ..................................................................................... 14, 15

*In re EZCORP, Inc. Sec. Litig.,*
2019 WL 6649017 (W.D. Tex. Dec. 6, 2019) ....................................................................... 12

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*,
4 F. Supp. 3d 94 (D.D.C. 2013) ........................................................................................... 10

*In re Katrina Canal Breaches Litig.,*
628 F.3d 185 (5th Cir. 2010) ............................................................................................... 16

*Jones v. Singing River Health Servs. Found.,*
865 F.3d 285 (5th Cir. 2017) ................................................................................................. 8

*Kostka v. Dickey's Barbecue Rests., Inc.,*
2022 WL 16821685 (N.D. Tex. Oct. 14, 2022) ................................................................... 6, 9

*Marcus v. J.C. Penney Co.,*
2017 WL 6590976 (E.D. Tex. Dec. 18, 2017) ....................................................... 5, 13, 14, 15

*Miller v. Republic Nat'l Life Ins. Co.,*
559 F.2d 426 (5th Cir. 1977) ................................................................................................. 5

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012)..................................................................... 10

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)............................................................................................... 16

*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ................................................................................... 6

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)......................................................... 17

**Statutes**

15 U.S.C. § 78u-4(a)(4) ................................................................................................ 13

**Other Authorities**

Edward Flores, Svetlana Starykh & Ivelina Velikova, *Recent Trends in Securities Class Action
    Litigation: 2025 Full-Year Review* (NERA Jan. 2026) .............................................. 11

*Manual for Complex Litigation* (Fourth) § 13.14 (2020) ............................................... 6

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ 6, 7, 8, 13

Lead Plaintiff Jason Hawke and all other members of the proposed Settlement Class, respectfully submit this motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of the Parties' agreed-upon proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement ("Preliminary Approval Order"), which is filed herewith. This motion is based on the following memorandum of law as well as the accompanying Declarations of Adam M. Apton ("Apton Decl.") (Lead Counsel), Eric Schachter (Claims Administrator), and Jason Hawke (Lead Plaintiff).[1]

## PRELIMINARY STATEMENT

The Parties have reached a proposed settlement of this securities class action (the "Action") for a total of $2,900,000.00 in cash (the "Settlement") that, if approved by the Court, will resolve all claims asserted against Defendants in this Action. Plaintiff requests that the Court preliminarily approve the proposed Settlement. As explained herein, Plaintiff respectfully submits that the Settlement warrants preliminary approval given that it is the result of arm's-length negotiations by experienced counsel overseen by a well-respected Mediator, represents a favorable recovery that falls well within the range of possible approval, and is very likely to meet all of the approval factors required by Rule 23(e) and Fifth Circuit precedent. If approved, the Settlement will resolve the claims pending against defendant Charles Daniel Vogt and Misty Kawecki (the "Defendants," and together with Plaintiff, the "Parties" and each a "Party"). The terms of the proposed Settlement are set forth in the Stipulation of Settlement, dated as of February 27, 2026, which was entered into by Plaintiff and the Defendants.

---

[1] All capitalized terms used in this Motion that are not defined have the same meanings as in the Stipulation and Agreement of Settlement, dated as of February 27, 2026 (the "Stipulation"). ECF No. 59. Unless otherwise noted, citations and internal quotations have been omitted.

If the Court grants preliminary approval, Plaintiff will be able to provide notice of the Settlement's terms and conditions to potential Settlement Class Members. A final approval hearing (the "Settlement Hearing") will then be conducted so that the Parties and Settlement Class Members may present arguments and evidence for and against the Settlement, and the Court will then make a final determination as to whether the Settlement is fair, reasonable, and adequate. The Court will also be asked to approve the proposed Plan of Allocation for distributing the proceeds of the Settlement and to consider Lead Counsel's Fee and Expense Application.

The proposed Preliminary Approval Order has been negotiated by the Parties and will, among other things: (i) preliminarily approve the Settlement; (ii) preliminarily certify the Settlement Class and appoint Plaintiff as Class Representatives and Lead Counsel as Class Counsel, for purposes of the Settlement only; (iii) approve the form and content of the long-form Notice, Claim Form, Postcard Notice, and Summary Notice, attached as Exhibits A1 through A4 to the Preliminary Approval Order; (iv) find that the notice program constitutes the best notice practicable under the circumstances and complies with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (v) set a date and time for the final Settlement Hearing; and (vi) appoint Angeion Group ("Angeion" or the "Claims Administrator"), which was selected after a competitive bidding process, to administer the Settlement process.

## FACTUAL AND PROCEDURAL HISTORY

### I.     PROCEDURAL HISTORY

On June 14, 2023, the initial complaint in the Action was filed by Plaintiff Jason Shim against DZS Inc. ("DZS") and Defendants alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). ECF No. 1.

On June 27, 2023, and August 9, 2023, additional complaints asserting substantially similar

causes of action were filed thereafter, styled *Link v. DZS Inc., et al.,* No. 4:23- cv-00603 (E.D. Tex.), and *Cody v. DZS Inc., et al.*, No. 4:23-cv-00713 (E.D. Tex.), respectively.

On August 14, 2023, counsel for Plaintiff filed a motion to consolidate the actions and for an order appointing lead plaintiff and lead counsel. ECF No. 12. On September 12, 2023, the Court consolidated the actions (ECF No. 22) and, on February 26, 2025, granted Plaintiff's motion to appoint him as lead plaintiff and his counsel, Levi & Korsinsky, LLP, as Lead Counsel (ECF No. 32).

On March 19, 2025, DZS filed a Suggestion of Bankruptcy after commencing bankruptcy proceedings in the United States Bankruptcy Court for the Eastern District of Texas (the "Bankruptcy Court"), Case No. 4:25-bk-40712 (the "Bankruptcy Action"). ECF No. 37.

On May 30, 2025, Plaintiff voluntarily dismissed DZS in response to the Bankruptcy Action while agreeing with Defendants that the Action may proceed without violating 11 U.S.C. §362(a), subject to the Bankruptcy Action's approval of a request to modify the Bankruptcy Code's automatic stay provision, to the extent applicable, to allow payment, reimbursement, and or advancement or defense costs under certain applicable insurance policies. ECF No. 44.

On June 24, 2025, Bankruptcy Judge Brenda T. Rhoades issued an order modifying the automatic stay, to the extent applicable, to allow payment, reimbursement, and advancement or defense costs under certain applicable insurance policies, permitting the Parties to proceed with the action. Bankruptcy Action ECF No. 164, "Bankruptcy Court Insurance Policy Order"; ECF No. 45.

On August 11, 2025, Plaintiff filed an amended complaint against Defendants (the "Amended Complaint"). ECF No. 48. On October 10, 2025, Defendants moved to dismiss the

3

Amended Complaint, which Plaintiff opposed on November 10, 2025, and which Defendants filed their reply brief in support of on December 10, 2025. ECF No. 49-51.

## II.    THE PROPOSED SETTLEMENT

In or around mid-2025, counsel for Plaintiff and Defendants began discussing the possibility of exploring a mediated resolution of the Action. To facilitate those discussions and subsequently assist them in reaching a potential negotiated resolution of the Action's claims against all Defendants, Plaintiff and the Defendants scheduled a mediation with David Murphy, Esq. of Phillips ADR Enterprises (the "Mediator"), a well-respected and experienced mediator.

In advance of the scheduled mediation, the Parties exchanged mediation statements, which addressed issues of liability and damages and presented the Parties' respective view of the claims and risks of continued litigation. *See* Apton Decl. at ¶22. On December 15, 2025, the Parties, through counsel, participated in a full-day mediation session before Mr. Murphy. *Id.* at ¶23.

The mediation ultimately succeeded after the Parties received and accepted a recommendation from Mr. Murphy to settle the Action for a cash payment of $2,900,000, subject to the negotiation of the terms of a stipulation of settlement, approval of the Bankruptcy Court as described in Section II below, and approval of the Settlement by the Court.

On December 23, 2025, the Parties jointly notified the Court that the Parties had reached a tentative settlement, and Plaintiff intended to file the necessary motion papers for preliminary approval after Defendants obtained the Bankruptcy Court's permission to use the proceeds of the policies to fund the tentative settlement.  ECF No. 53.  In light of the settlement-in-principle, the Parties jointly requested that, in the interim, all pending deadlines be suspended and that the case be administratively stayed. *Id.* That same day, the Court issued an order granting the Parties request for an administrative stay and instructed the Parties to file a joint status update every thirty (30)

days. ECF No. 54.  That same day, the Court issued an order granting the Parties' request for an administrative stay and instructed the Parties to file a joint status update every thirty (30) days. ECF No. 54.

On February 27, 2026, the Parties entered into a Stipulation of Settlement. In exchange for payment of the Settlement Amount, upon the Effective Date of the Settlement, Plaintiff and the Settlement Class will release the Released Plaintiff's Claims against the Released Defendant Parties, and Defendants will release the Released Plaintiff Parties from all Released Defendants' Claims. *See* Stipulation § II, X.

**ARGUMENT**

**I.       PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED**

**A.  Standards for Preliminary Approval of a Proposed Class Action Settlement.**

Settlement is a strongly favored method for resolving class action litigation. *See In re Deepwater Horizon,* 739 F.3d 790, 807 (5th Cir. 2014) (noting the "'overriding public interest in favor of settlement' that [the Fifth Circuit has] recognized '[p]articularly in class action suits'"); *Marcus v. J.C. Penney Co.,* 2017 WL 6590976, at *3 (E.D. Tex. Dec. 18, 2017) ("There is a strong judicial policy in favor of settlements, particularly in the class action context."), *Rep. & Recommendation adopted,* 2018 WL 307024 (E.D. Tex. Jan. 4, 2018). Further, the Fifth Circuit has consistently held that, as a result of their highly-favored status, settlements "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." *Miller v. Republic Nat'l Life Ins. Co.,* 559 F.2d 426, 428 (5th Cir. 1977).

Rule 23(e) requires judicial approval of class action settlements. Such approval is a two-step process. First, the court performs a preliminary review to determine whether the terms of the proposed settlement are sufficient to warrant notice of the settlement to the class and a hearing; and second, after notice has been provided and a hearing held, the court determines whether to

grant final approval of the settlement. *See Claudet v. Cytec Ret. Plan,* 2020 WL 3128611, at *3 (E.D. La. June 12, 2020); *see also Manual for Complex Litigation* (Fourth) § 13.14 (2020).

With respect to the first step of the approval process, a court should grant preliminary approval and authorize notice to the class upon a finding that the court "***will likely be able***" to: (i) finally "approve the [settlement] under Rule 23(e)(2); and (ii) certify the class for purposes of [the settlement]." Fed. R. Civ. P. 23(e)(1)(B). In considering whether final approval is likely, Rule 23(e)(2) provides that courts should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3);[2] and (D) the proposal treats class members equitably relative to each other.

Courts in the Fifth Circuit may also consider the factors enumerated in *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983),[3] many of which overlap with the Rule 23(e) factors. *See Kostka v. Dickey's Barbecue Rests., Inc.,* 2022 WL 16821685, at *10 (N.D. Tex. Oct. 14, 2022),

---

[2] The only agreements between the Parties concerning the Settlement are the Stipulation and a Confidential Supplemental Agreement Regarding Requests for Exclusion, dated as of February 25, 2026 ("Supplemental Agreement"). See Stipulation ¶ 40. The Supplemental Agreement sets forth the conditions under which Defendants has the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed certain agreed-upon criteria stated in the Supplemental Agreement (the "Opt-Out Threshold"). As is standard in securities class actions, the Supplemental Agreement is not made public in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the Opt-Out Threshold to exact an individual settlement. Pursuant to its terms, the Supplemental Agreement may be submitted to the Court in camera or under seal.

[3] The Fifth Circuit's approval factors are: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Reed*, 703 F.2d at 172.

*Rep. & Recommendation adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022) (the "Rule 23(e)(2) requirements … overlap significantly with the *Reed* factors"). The Rule 23(e)(2) factors are not intended to "displace any factor" traditionally used by courts to assess settlement approval, but rather to focus on core concerns to guide the approval decision. *Id.* at 10; *see also Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019) (considering "the criteria set forth in [Rule] 23(e)(2) as well as the Fifth Circuit's *Reed* factors").

Plaintiff respectfully requests that the Court take the first step in the settlement approval process and grant preliminary approval. As summarized below, and as will be detailed further in a subsequent motion for final approval of the Settlement, this Settlement is more than likely to meet all of the factors required for final approval and, therefore, warrants preliminary approval.

### B. **Adequate Representation**

In determining whether to approve a class action settlement, a court should consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).

Throughout the Action, Plaintiff had the benefit of the advice of knowledgeable counsel well-versed in shareholder class action litigation and securities fraud cases. Levi & Korsinsky, LLP is among the most experienced and skilled firms in the securities litigation field, and has a long and successful track record in such cases. *See* Apton Decl. at ¶¶53-54.

Moreover, Plaintiff and Lead Counsel diligently prosecuted the Action and considered the benefits of a resolution before agreeing to settle. Lead Counsel has developed a deep understanding of the facts of the case and merits of the claims through: (i) conducted a thorough and wide-ranging investigation concerning the allegedly fraudulent misrepresentations made by Defendants, which included a review and analysis of publicly available information and interviews conducted with

former employees; (ii) consulted with experts on market efficiency, loss causation, and damages; (iii) prepared and filed a detailed consolidated amended complaint ("Amended Complaint") (ECF No. 48); (iv) conducted legal research and otherwise prepared for Defendants' motion to dismiss; (v) prepared and filed a detailed opposition to Defendants' motion to dismiss (ECF No. 50); and (vi) engaged in extensive mediation efforts overseen by David Murphy, Esq., which included the preparation of mediation briefs and a full-day mediation session.  Plaintiff and Lead Counsel evaluated the potential risks in the case and negotiated vigorously to secure the $2.9 million recovery. *Billitteri v. Sec. Am., Inc.*, 2011 WL 3586217, at \*10 (N.D. Tex. Aug. 4, 2011) ("settlement was diligently negotiated after a long and hard-fought process that culminated in ultimately successful mediation."). Accordingly, the Settlement Class has been, and remains, well represented.

**C.  The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel**

In assessing a proposed settlement, courts must also consider whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). In conducting this assessment, courts recognize "[t]he involvement of 'an experienced and well-known mediator [to be] a strong indicator of procedural fairness.'" *Jones v. Singing River Health Servs. Found.,* 865 F.3d 285, 295 (5th Cir. 2017); *see also Erica P. John Fund, Inc. v. Halliburton Co.,* 2018 WL 1942227, at \*4 (N.D. Tex. Apr. 25, 2018) (finding securities class action settlement "obtained through formal mediation … strongly suggests that the settlement was not the result of improper dealings").

Here, the Settlement was achieved by Plaintiff's and Lead Counsel's arm's-length negotiations with the Defendants and their counsel, overseen by an experienced third-party neutral mediator, David Murphy, Esq. The Parties had widely differing views of Plaintiff's ability to prove scienter and damages, as well as Defendants' potential liability under the federal securities laws.

8

Nevertheless, after extensive negotiations and a candid assessment of the strengths and weaknesses of their respective positions, the Parties were able to reach the Settlement now before the Court. The involvement of an experienced mediator and the adversarial nature of the negotiations strongly support a finding that the Settlement is procedurally fair.

### D. The Settlement Provides Significant and Certain Benefits

#### 1. Many Risks to Recovery Remained

Rule 23(e)(2)(C)(i) instructs courts to consider the adequacy of a proposed settlement in light of "the costs, risks, and delay of trial and appeal." "The first consideration—the costs risks, and delay of trial and appeal—also implicates four of the Reed factors: (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings; (4) plaintiffs' probability of success; (5) the range of possible recovery." *Kostka,* 2022 WL 16821685, at *11.

To determine whether a proposed settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation against the benefits to class members through settlement. Although Plaintiff and Lead Counsel believe the claims to be strong, they acknowledge that Defendants could advance several substantial arguments that could have reduced, or altogether eliminated, any recovery for investors. Indeed, it is well known that "[s]ecurities claims are particularly difficult to prove because of the high bar for establishing falsity and scienter." *Celeste Neely v. Intrusion Inc.,* 2022 WL 17736350, at *4 (E.D. Tex. Dec. 16, 2022).

First, Plaintiff would have faced significant hurdles at the pleading stage, summary judgment and at trial, including overcoming Defendants' pending motion to dismiss and ultimately proving scienter under the heightened pleading standards imposed by the PSLRA. Defendants disputed that they acted with fraudulent intent or severe recklessness and challenged the reliability and sufficiency of Plaintiff's confidential witness allegations, the significance of the alleged accounting irregularities, and whether the alleged red flags were sufficient to support a strong

9

inference of scienter. Even if Plaintiff survived dismissal, substantial risks would have remained in proving that Defendants knowingly or recklessly made materially false or misleading statements, as well as establishing loss causation and damages at class certification, summary judgment, and trial. Continued litigation would also have required extensive fact and expert discovery, significant motion practice, all of which would have substantially increased the expense and duration of the Action with no guarantee of recovery.

Second, Plaintiff would have to successfully certify a class of investors for the remaining claims. While Plaintiff has not yet filed a motion for class certification, he anticipates that Defendants would raise traceability, truth on the market, or other challenges that could narrow the proposed class definition (and damages) or provide a foundation for successfully challenging certification on appeal.

Plaintiff consulted with an expert in damages who estimated class-wide statutory damages in light of the facts and circumstances presented in the case. Plaintiff's consulting damages expert estimated that maximum statutory damages were approximately $44.6 million, depending on the trading model and assumptions used. Plaintiff and Lead Counsel nevertheless recognized that substantial risks remained in establishing liability and scienter, as well as proving the amount of recoverable damages through expert testimony, motion practice, and trial.

Accordingly, the Settlement recovers approximately 6.5% of estimated maximum damages, which is a favorable result. *See, e.g., In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d 94, 103 (D.D.C. 2013) (settlement value approximating "4-8% of the 'best case scenario' potential recovery" deemed reasonable); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or

unfair"); *In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at \*12 (E.D.N.Y. Jan. 4, 2024) (settlement representing approximately 1% of maximum damages approved as reasonable). In fact, over the past ten years, the median percentage of recovery (based upon NERA-defined losses) in securities class actions with similar investor losses was 5.2% of investor losses. *See* Edward Flores, Svetlana Starykh & Ivelina Velikova, *Recent Trends in Securities Class Action Litigation: 2025 Full-Year Review* (NERA Jan. 2026), Apton Decl., Ex. A at 29.

Furthermore, even if Plaintiff was to convince a jury on liability and damages, there are considerable risks to continuing the litigation. DZSI has since entered bankruptcy, which significantly limits the practical ability to obtain any meaningful recovery from the Company itself. Continuing to litigate would increase the risk that any available insurance proceeds are depleted through continued defense costs and potential competing claims, thereby reducing the pool of funds potentially available for settlement or recovery. In light of these realities, further litigation would introduce substantial uncertainty and delay without a commensurate likelihood of improving the Class's recovery.

### 2. The Effective Process for Distributing Relief to the Settlement Class

The Settlement, like most securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator, Angeion. Angeion will employ a well-tested protocol for the processing of claims. Namely, a Claimant will submit, either by mail or online using the Settlement website, the Court-approved Claim Form. Based on the trade information provided by Claimants, Angeion will determine each Claimant's eligibility to recover by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each eligible Claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation, Exhibit A-1. Plaintiff's claims will be reviewed in the

11

same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. *See* Stipulation, Exhibit A, p. 7. Any claim disputes that cannot be resolved will be presented to the Court for a determination. *Id.*

After the Settlement reaches its Effective Date (Stipulation, § X) and the claims process is completed, Authorized Claimants will be issued payments. If there are un-claimed funds six-months after the initial distribution, and it would be feasible and economical to conduct a further distribution, Angeion will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). *See* Stipulation, Exhibit A-1. Additional distributions will take place until it is no longer economical to continue. *Id.*

### 3.  The Settlement Does Not Excessively Compensate Lead Counsel

The reasonableness of attorneys' fees will be decided by the Court after Lead Counsel files a motion for attorneys' fees and Litigation Expenses. The Settlement does not contemplate any specific award. Lead Counsel will be compensated out of the Settlement Fund, under the common fund doctrine, and will not be compensated by Defendants. Lead Counsel will seek no more than 33% of the Settlement Fund, an amount that is within the percentages that courts in the Fifth Circuit have approved. *See, e.g., Celeste Neely,* 2022 WL 17736350, at *13 ("[C]ounsel is customarily awarded fees ranging from twenty-five percent of the settlement fund to over thirty-three percent of the settlement fund."); *In re EZCORP, Inc. Sec. Litig.,* 2019 WL 6649017, at *1 (W.D. Tex. Dec. 6, 2019) (awarding 33%). Lead Counsel will also seek payment of Litigation Expenses, including awards to Plaintiff pursuant to the PSLRA, of no more than $100,000, plus accrued interest.

### E. Settlement Class Members Are Treated Equitably Relative to One Another

The Settlement does not improperly grant preferential treatment to Plaintiff or any segment of the Settlement Class. Rather, all Settlement Class members and Plaintiff, will receive a distribution from the Net Settlement Fund based on their "Recognized Claim" pursuant to the Court-approved Plan of Allocation.[4] The proposed plan was created by Plaintiff's damages expert and is consistent with damages theories under the Securities Act and the Exchange Act.

## II.    PRELIMINARY CERTIFICATION OF THE SETTLEMENT

In preliminarily approving the proposed Settlement, the Court must consider whether it will be able to certify the Settlement Class under Fed. R. Civ. P. 23(a) and (b)(3). Fed. R. Civ. P. 23(e)(1)(B). Plaintiff respectfully requests that the Court preliminarily certify the Settlement Class, which has been stipulated to by the Parties and is defined as "all Persons and entities who or which purchased or otherwise acquired DZS common stock between May 4, 2022 to November 9, 2023, both dates inclusive (the "Class Period") and were allegedly damaged thereby," solely for the purposes of Settlement. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997) (acknowledging the propriety of certifying a class solely for settlement purposes).[5] As discussed below, the Action satisfies all the factors for certification.

### A. The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder

---

[4] Plaintiff may seek reimbursement of reasonable costs and expenses (including lost wages) directly related to his participation in the Action, pursuant to the PSLRA. This would not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of a plaintiff's costs is explicitly contemplated, in addition to receiving a *pro rata* portion of the recovery).

[5] A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and (b). *See Marcus,* 2016 WL 8604331, at *1 (certifying class in securities fraud action). Nevertheless, manageability concerns are not at issue for a settlement class. *See Amchem Prods.,* 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").

of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

Rule 23(a)(1)'s numerosity requirement is satisfied because DZS common stock traded on the Nasdaq Global Sector Market ("Nasdaq") and Plaintiff believes that there are thousands of potential Settlement Class Members (*see* Amended Complaint at ¶ 20). *See, e.g., Celeste Neely,* 2022 WL 17736350, at *8 ("When class action claims involve 'nationally traded securities,' courts generally assume that the numerosity requirement is satisfied.").

Rule 23(a)(2)'s common questions of law and fact requirement is satisfied because the following non-exhaustive list of common questions exist as to all potential Settlement Class Members: (i) whether Defendants' misrepresentations and omissions violated the federal securities laws; and (ii) whether the Settlement Class Members have sustained damages, and the proper measure of damages (*see* Amended Complaint at ¶ 204). *See Marcus,* 2016 WL 8604331, at *3 ("The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members."); *In re Dynegy, Inc. Sec. Litig.,* 226 F.R.D. 263, 269 (S.D. Tex. 2005) ("This requirement is not demanding and is satisfied if at least one issue's resolution will affect all or a significant number of class members.").

Rule 23(a)(3)'s typicality requirement is satisfied because Plaintiff's claims arise from the same alleged course of conduct that gives rise to claims of other Settlement Class Members, are based on the same legal theories, and will be proven by the same set of operative facts. *See Celeste Neely,* 2022 WL 17736350, at *9 (finding typicality when "shareholder who suffered the same alleged injuries as the other class members arising from the same alleged wrongdoing.").

Rule 23(a)(4)'s requirement that named plaintiffs must "fairly and adequately protect the

14

interests of the class" is satisfied because: (i) Plaintiff purchased or otherwise acquired DZS publicly traded common stock during the Class Period and were subjected to the same alleged conduct, such that there are no conflicts with potential Settlement Class Members and there is no need for a subclass; and (ii) Plaintiff is represented by competent and qualified counsel who have vigorously litigated the claims of the proposed class. *See Marcus*, 2016 WL 8604331, at *3 ("The adequacy inquiry … encompasses the class representative, their counsel, and the relationship between the two…. It serves to uncover conflicts of interest between named parties and the class they seek to represent.").

### B. <u>The Settlement Class Satisfies the Requirements of Rule 23(b)(3)</u>

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Here, the central issue for establishing Defendants' liability is whether they made misstatements or omissions of material fact—an issue that is susceptible to generalized proof. (see SAC at ¶ 204). *See Celeste Neely,* 2022 WL 17736350, at *9 ("[C]lass issues predominate over individual issues … because each claim presents virtually identical questions of law and fact, except that some class member may have suffered different amounts of damages compared to others."); *Dynegy,* 226 F.R.D. at 270 ("the Supreme Court has acknowledged that '[p]redominance is a test readily met in certain cases alleging consumer or securities fraud.'").

Moreover, class resolution here will be "superior to other available methods for fairly and efficiently adjudicating the controversy," because: (i) the number of Settlement Class Members is far too numerous, and the typical claim is too small, for each individual Settlement Class Member to have an interest in maintaining a separate action; (ii) Lead Counsel is not aware of any individual

Settlement Class Member interested in bringing its own action against Defendants for the alleged misrepresentations; (iii) the geographical dispersion of the Settlement Class Members makes it desirable to litigate Plaintiff's claims in this forum; (iv) there are no management difficulties that would preclude this Action from being maintained as a class action. *See, e.g.*, *Celeste Neely*, 2022 WL 17736350, at *9 ("Class adjudication is especially preferred for securities fraud cases like this one because—given 'the expense and burden that such litigation ... entail[s]'—the claims would likely 'never be heard' otherwise."). In sum, the proposed Settlement Class meets all of the requirements of Rules 23(a) and (b)(3) and is appropriate for certification.

### III.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

The proposed notices attached as Exhibits A1, A3, and A4 to the proposed Preliminary Approval Order, would satisfy due process, the federal rules, and the PSLRA. Rule 23(c)(2)(B) requires notice of the pendency of a class action and settlement to be "the best notice that is practicable under the circumstances." It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). Due process is satisfied if the notice provides class members with the "information reasonably necessary for them to make a decision whether to object to the settlement." *In re Katrina Canal Breaches Litig.,* 628 F.3d 185, 197 (5th Cir. 2010).

Under Federal Rule of Civil Procedure 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Lead Counsel proposes to provide notice by: (i) individual mailing of the Postcard Notice to all Settlement Class Members who can reasonably be identified, using mailing records obtained from DZS' transfer agent, as well as information provided by third party banks, brokers, and other nominees about their customers; (ii) emailing of the Postcard Notice (to the extent emails are provided); (iii)

16

publication of the Summary Notice electronically once on a broadly-disseminated national wire service; and (iv) posting documents on a website from which copies can be downloaded. *See* proposed Preliminary Approval Order. Angeion will also mail the Notice and Claim Form upon request. The Postcard Notice will provide key information regarding the Settlement and the rights of Settlement Class Members in connection therewith, and will direct recipients to the website for more detailed information. Numerous courts have approved similar notice programs. *See, e.g., Halliburton,* 2018 WL 1942227, at *3 (holding that notices delivered through similar procedures— *i.e.*, mailed notice, publication notice, and website—satisfied the Rule 23 requirement); *Schwartz v. TXU Corp.,* 2005 WL 3148350, at *10-11 (N.D. Tex. Nov. 8, 2005) (same).

Plaintiff also requests that the Court appoint Angeion as the Claims Administrator. Angeion is a nationally recognized notice and claims administration firm that has successfully and efficiently administered numerous complex securities class action settlements.

## IV.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

Plaintiff respectfully proposes the schedule in Appendix A for Settlement-related events. The proposed schedule revolves around the date that the Court enters the Preliminary Approval Order and the date on which the Court schedules the final Settlement Hearing—which Plaintiff requests be approximately 100 days from entry of the Preliminary Approval Order, in order to allow time for the notices to be disseminated and for recipients to act.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order, submitted herewith, which will: (i) preliminarily approve the Settlement; (ii) approve the proposed manner and forms of notice to the Settlement Class; (iii) appoint Angeion as Claims Administrator; (iv) set a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters, and (v) grant such other and further

17

relief as may be required.

DATED: May 19, 2026                    **LEVI & KORSINSKY, LLP**

                                       _s/ Adam M. Apton_
                                       Adam M. Apton (admitted _pro hac vice_)
                                       33 Whitehall Street, 27th Floor
                                       New York, New York 10004
                                       Tel.: (212) 363-7500
                                       Fax: (212) 363-7171
                                       Email: aapton@zlk.com

                                       _Lead Counsel for Lead Plaintiff and Lead Counsel for the Class_

                                       **SPONSEL MILLER GREENBERG PLLC**
                                       Thane Tyler Sponsel III
                                       Texas Bar No. 24056361/Federal ID No. 690068
                                       Roger B. Greenberg
                                       Texas Bar No. 08390000/Federal ID No. 3932 50
                                       Briar Hollow Lane, Suite 370 W
                                       Houston, Texas 77027
                                       Telephone: (713) 892-5400
                                       Facsimile: (713) 892-5401
                                       sponsel@smglawgroup.com
                                       roger@smglawgroup.com

                                       _Liaison Counsel for Lead Plaintiff and Liaison Counsel the Class_

18

## Appendix A

### SCHEDULE OF SETTLEMENT RELATED EVENTS

| | |
|---|---|
| Deadline for commencement of mailing the Postcard Notice | *No later than 14 calendar days after entry of Preliminary Approval Order ("Notice Date")* |
| Deadline for publishing the Summary Notice | *Within 14 calendar days of the Notice Date.* |
| Deadline for filing motions in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | *No later than 63 calendar days before the Settlement Hearing.* |
| Deadline for receipt of requests for exclusion or objections | *Received no later than 28 calendar days before the Settlement Hearing.* |
| Deadline for submitting Claim Forms | *110 calendar days after entry of the Preliminary Approval Order* |
| Deadline for filing reply papers | *No later than 14 calendar days before the Settlement Hearing.* |
| Settlement Hearing | *At the Court's convenience, approximately 100 calendar days from entry of the Preliminary Approval Order. The hearing may be held either in-person or remotely, in the discretion of the Court. Any scheduling updates will be posted on the Settlement website and Lead Counsel's website.* |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 19, 2026, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.

Dated: May 19, 2026

*/s/ Adam M. Apton*
Adam M. Apton
